1  GARY A. CLARK, Cal. Bar No. 65455
   gclark@sheppardmullin.com
2  DARREN M. FRANKLIN, Cal. Bar No. 210939
   dfranklin@sheppardmullin.com
3  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
4    Including Professional Corporations
   333 South Hope Street, 48th Floor
5  Los Angeles, California  90071-1448
   Telephone:  (213) 620-1780
6  Facsimile:  (213) 620-1398

7  Attorneys for Plaintiff
   CENTOCOR, INC.
8
   Of Counsel:
9
   Dianne B. Elderkin (*pro hac vice* pending)
10 elderkin@woodcock.com
   Barbara L. Mullin (*pro hac vice* pending)
11 mullin@woodcock.com
   WOODCOCK WASHBURN LLP
12 2929 Arch Street, 12th Floor
   Philadelphia, Pennsylvania 19104
13 Telephone:  (215) 568-3100
   Facsimile:  (215) 568-3439

14

15                UNITED STATES DISTRICT COURT

16                CENTRAL DISTRICT OF CALIFORNIA

17                       WESTERN DIVISION

18

19 | CENTOCOR, INC.,                    | Case No.  CV08-03573 PA (AGRx)
20 |           Plaintiff,               | **COMPLAINT FOR DECLARATORY JUDGMENT**
21 | v.                                 |
22 | GENENTECH, INC. and CITY OF HOPE NATIONAL MEDICAL
23 | CENTER,                            |
24 |           Defendants.              |

25

26         Plaintiff Centocor, Inc. ("Centocor"), for its complaint, alleges as

27 follows:

28

-1-

W02-WEST:LGA\400861088.1                       COMPLAINT FOR DECLARATORY JUDGMENT

## NATURE OF THE CASE

1. In this action, Centocor seeks a declaration that U.S. Patent No. 6,331,415 (the "Cabilly II patent") is invalid, unenforceable and/or not infringed by Centocor's abciximab and ustekinumab antibody products.

## THE PARTIES

2. Centocor is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business in Horsham, Pennsylvania.

3. On information and belief, Genentech, Inc. ("Genentech") is a Delaware corporation with its principal place of business in South San Francisco, California.

4. On information and belief, City of Hope National Medical Center ("City of Hope") is a California not-for-profit organization with its principal place of operation in Duarte, California.

5. On information and belief, Genentech and City of Hope are co-assignees of the Cabilly II patent.

## JURISDICTION AND VENUE

6. This action arises under the Declaratory Judgment Act, Title 28 of the United States Code, Chapter 151, for the purpose of determining an actual and justiciable controversy between the parties hereto. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over Genentech based on its principal place of business in California. This Court has personal jurisdiction over City of Hope based on its organization under the laws of the state of California and because its principal place of operation is in California.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c), and (d).

## THE CABILLY PATENTS

9. On April 8, 1983, Shmuel Cabilly, Herbert Heyneker, William Holmes, Arthur Riggs and Ronald Wetzel (the "Cabilly Applicants") filed a patent application in the United States Patent and Trademark Office ("PTO") that issued on March 28, 1989, as U.S. Patent No. 4,816,567 (the "Cabilly I patent"). On information and belief, the Cabilly Applicants assigned their rights to Genentech and/or City of Hope.

10. On the same day that the Cabilly I patent issued, U.S. Patent No. 4,816,397 (the "Boss patent") issued to Michael Boss, John Kenten, John Emtage and Clive Wood (the "Boss Applicants"). On information and belief, the Boss Applicants assigned their rights to Celltech Therapeutics Limited ("Celltech"). Celltech is a British company with its principal place of business in Slough, England.

11. At the time that the Boss and Cabilly I patents issued, the Cabilly Applicants had a continuation application pending in the PTO (the "Cabilly II application"). The Cabilly Applicants copied claims from the Boss patent in order to provoke the PTO Board of Patent Appeals & Interferences to initiate an interference proceeding to determine priority – i.e., to determine whether it was the Cabilly Applicants or the Boss Applicants who had made the purported invention first.

12. In February 1991, the PTO Board declared a patent interference between the pending Cabilly II application and the Boss patent on the basis that both claimed the same purported invention.

13. After years of adversarial proceedings in the PTO, in August 1998, the PTO Board found that the Boss patent was entitled to priority over the Cabilly II application. The Final Decision indicated that the Cabilly Applicants were "not entitled to a patent . . . ."

14. In October 1998, Genentech filed a civil action to appeal the decision of the PTO Board awarding priority to the Boss patent (Genentech, Inc. v. Celltech Ltd., Case no. C98-3926 (N.D. Cal.)). In March 2001, the parties to that action filed a notice of settlement and joint request for entry of settlement instruments. As part of their settlement, the parties asked the district court to find that Genentech won the priority contest. The district court then issued an order directing the PTO to vacate its determination that the Boss Applicants were entitled to priority, to revoke the Boss patent, and to issue a patent on the Cabilly II application.

15. After the district court issued its order to the PTO, the PTO referred the Cabilly II application to an examiner for further action, including consideration of materials previously submitted to the PTO that had not clearly been considered by the examiner.

16. One of the papers submitted by the Cabilly Applicants prior to declaration of the interference was an Information Disclosure Statement that identified, among other references, Valle et al., Nature, 300:71-74 (1982). In its Information Disclosure Statement, the Cabilly II Applicants characterized this

-4-

1  reference as being cited as part of a group of references identified "in the interests of
2  good order" because it was cited during prosecution of the Cabilly I application. The
3  Cabilly Applicants also expressly represented that the Valle (1982) work "is readily
4  distinguishable from the instant claims in that the oocytes are not transformed with
5  DNA, but instead are used to transiently express mRNA preparations." (Sept. 18,
6  1991 IDS at page 2). This Information Disclosure Statement was signed by a
7  representative of Genentech. This representation, however, contradicted a
8  representation Genentech had made about the Valle (1982) reference when it was
9  opposing Celltech's European Boss patent.

11         17.    During the time that Genentech and Celltech were involved in the
12  interference proceeding, Genentech submitted an opposition to Celltech's European
13  patent (EP-B-0120694), the European patent corresponding to the Boss patent. The
14  claims in the Celltech European Boss patent and the claims in the Cabilly II
15  application were both directed, inter alia, to processes for producing a heterologous
16  Ig molecule in a single host cell comprising transforming the host cell with separate
17  DNA sequences encoding polypeptide chains comprising at least the variable
18  domains of the heavy and light chains and then expressing those chains separately in
19  the transformed host cell.

21         18.    As part of the grounds for opposition in the European proceeding,
22  Genentech identified the Valle (1982) publication as a reference that anticipated the
23  Boss European patent. Contrary to the characterization of this reference during the
24  Cabilly II application prosecution, Genentech specifically represented to the
25  European Patent Office that Valle (1982):
26         clearly teaches the production of an immunologically
27         functional heterologous immunoglobulin molecule in
28         eukaryotic cells transfected by separate DNA molecules

-5-

encoding its heavy and light chains, respectively. In view of the broad implications evidenced by the Abstract, the fact that the actual experiment was performed with microinjected mRNAs is not relevant. In any event, because the messenger RNA carries the information from DNA to the ribosomal sites of protein synthesis, it is functionally equivalent to DNA.

19. Thus, when it was in its interest to do so during its opposition to Celltech's European Boss patent, Genentech took the position that the Valle (1982) reference clearly teaches the production of an immunologically functional heterologous immunoglobulin molecule in eukaryotic cells transfected by separate DNA molecules encoding its heavy and light chains, whereas during the prosecution of the Cabilly II application, it was asserted that the Valle (1982) reference was "readily distinguishable" because the oocytes were not transformed with DNA.

20. The Valle (1982) reference was, by Genentech's own assertions, material to the patentability of at least some of the subject matter common to the Cabilly II application and Boss patent claims. But the Cabilly Applicants did not advise the Examiner that Genentech had relied upon this Valle (1982) reference in opposing the Boss European patent, nor did it advise the Examiner of the contrary positions that it had taken in the European opposition proceeding with respect to the teachings of the Valle (1982) reference.

21. The Information Disclosure Statement submitted by the Cabilly Applicants prior to declaration of the interference also identified, among other references, Rice et al., Proc. Natl. Acad. Sci. 77:7862-7865 (1982). In its Information Disclosure Statement, the Cabilly II Applicants characterized this

reference as being cited as part of a group of references identified "in the interests of good order" because it was cited during prosecution of the Cabilly I application and indicated that they were not providing a copy of this reference.

22. The citation provided to the PTO was, however, in error. When opposing the Celltech European Boss patent, Genentech cited Rice et al., Proc. Natl. Acad. Sci. 79:7862-7865 (1982), and argued that the subject matter of the European Boss patent did not involve an inventive step over this disclosure in view of other references.

23. Thus, although the Rice (1982) reference was, by Genentech's own assertions, material to the patentability of at least some of the subject matter common to the Cabilly II application and Boss patent claims, the Cabilly Applicants did not advise the Examiner that: (a) Genentech had relied upon this Rice (1982) reference in opposing the Boss European patent; (b) that Genentech argued that the Boss European patent did not involve an inventive step in view of this and other references; or (c) that it had mis-cited this reference in its Information Disclosure Statement. This information was material to the prosecution of the Cabilly II patent.

24. Also, during this post-interference and post-district court action prosecution of the Cabilly II application (the "post-proceeding prosecution"), the Cabilly Applicants submitted a substantial amount of material to the PTO, including listings of numerous pleadings from the litigation as well as numerous prior art references. Pursuant to the express provisions of the Manual of Patent Examining Procedure, submission of such long lists should be avoided but, if necessary, then Applicants are directed to "highlight" the documents known to be of most significance. MPEP 2004(13). The Cabilly II Applicants did not do so.

25.     Although the Cabilly II Applicants dumped numerous references on the PTO, they failed to identify critical prior art, including U.S. Patent No. 4,399,216, issued to Axel et. al. on August 16, 1983, assigned on its face to The Trustees of Columbia University (the "'216 patent"). On information and belief, the '216 patent was known to Genentech, and its materiality to the Cabilly II claims and recombinant production of antibodies in general was known to Genentech, at least based on the fact that Genentech had taken a license of this patent for which it paid substantial royalties.

26.     The Cabilly II patent issued on December 18, 2001, and is assigned on its face to Genentech. The Cabilly II patent is presently under Reexamination (Control No. 90/007,542) at the PTO, where all claims of the Cabilly II patent are currently under final rejection. The bases for rejection include obviousness-type double patenting.

27.     That the Rice (1982) reference is material to the patentability of the Cabilly II patent claims is confirmed by the fact that it is has been relied upon by the PTO in rejecting the Cabilly II patent claims during the reexamination proceeding.

28.     That the '216 patent is material to the patentability of the Cabilly II patent claims is confirmed by the fact that it is has been relied upon by the PTO in rejecting the Cabilly II patent claims during the reexamination proceeding.

29.     The foregoing provides examples of actions demonstrating that, during examination of the Cabilly II Application, while under a duty of candor to the PTO, Genentech and/or the Cabilly Applicants intended to mislead the PTO and did not act in good faith in dealing with the PTO. Intent can be inferred at least from the

-8-

fact that Genentech failed to disclose statements and references which, by its own assertions in the Boss European Opposition proceedings, were material to the patentability of the Cabilly II application claims.

## THE LICENSE AGREEMENTS

**Abciximab (ReoPro®)**

30. On December 5, 1994, Centocor entered into an Agreement with Genentech under which it received, inter alia, a license under the Cabilly I patent and under the application which ultimately issued as the Cabilly II patent to make, have made, use, and sell substances capable of binding to the GPIIb IIIa receptor which, but for the license, would infringe one or more claims of the patents (the "Genentech Agreement"). Centocor has paid, and Genentech has accepted, royalties on sales of abciximab, an antibody fragment which binds to the glycoprotein GPIIb IIIa of human platelets and inhibits platelet aggregation.

31. There is an actual and justiciable controversy between Centocor, Genentech and City of Hope with respect to whether making, using and selling abciximab infringes any valid and enforceable claim of the Cabilly II patent.

**Infliximab (Remicade®)**

32. On March 31, 1998, Centocor entered into a Patent License Agreement with Celltech under which it received, inter alia, a non-exclusive sublicense under the "Genentech Licensed Patents," which included the Cabilly I patent and any patents maturing from applications that were continuations of the Cabilly I patent, which includes the later-issued Cabilly II patent (the "Celltech Agreement"). This was a license to develop, make, have made, use and sell a pharmaceutical product containing a recombinant engineered antibody or antibody fragment capable of binding specifically to TNF-alpha, being both the product later

1  marketed by Centocor as infliximab (Remicade®) and one additional product whose
2  research and development was conducted under the direction of Centocor by itself or
3  in collaboration with a third party.

5        33.    On information and belief, at least a portion of the royalties that
6  Centocor pays to Celltech based on its infliximab (Remicade®) product are passed
7  through to Genentech and/or City of Hope.

**Ustekinumab (CNTO-1275)**

10        34.    Ustekinumab (CNTO 1275) is a new, human monoclonal
11  antibody developed by Centocor which targets the cytokines interleukin-12 (IL-12)
12  and interleukin-23 (IL-23), naturally occurring proteins that are important in
13  regulating immune responses and that are thought to be associated with some
14  immune-mediated inflammatory disorders, including psoriasis.

16        35.    All Phase III clinical trials believed necessary to support an
17  application for approval to sell ustekinumab in the United States have been
18  completed. In February 2008, the Biologics License Application (BLA) for
19  ustekinumab (CNTO 1275) was accepted for review by the U.S. Food and Drug
20  Administration for the treatment of chronic moderate-to-severe plaque psoriasis in
21  adults. Centocor expects to obtain regulatory approval to market and sell
22  ustekinumab in the United States within the next year.

24        36.    Centocor has been making substantial preparations to market and
25  sell ustekinumab in the United States upon receipt of regulatory approval to do so. It
26  has hired and been training key management, support and sales personnel to market
27  and sell ustekinumab; retaining outside consultants and vendors to assist in its
28  marketing and sale of ustekinumab in the United States; has retained suppliers and

advertising agencies to prepare for the launch of the product; has prepared promotional materials for the launch of the product; has initiated planning for medial affairs and pharmacovigilance activities associated with the marketing of the product; has built supply capacity; and is completing manufacturing and distribution launch preparations.

37. Genentech has advised Centocor that its existing licenses would not cover the marketing and sale of ustekinumab and has acknowledged that Centocor will need an additional license from Genentech under the Cabilly II patent for ustekinumab. There is an actual and justiciable controversy between Centocor, Genentech, and City of Hope with respect to whether Centocor's making, using and selling of ustekinumab will infringe any valid and enforceable claim of the Cabilly II patent.

## FIRST CAUSE OF ACTION
## PATENT INVALIDITY

38. Centocor incorporates the allegations of paragraphs 1-37 as if fully set forth herein.

39. An actual controversy has arisen and now exists between the parties concerning the validity of the Cabilly II patent.

40. The Cabilly II patent is invalid because it is anticipated and/or obvious under 35 U.S.C. §§ 102 and 103.

41. The Cabilly II patent is invalid based on the judicially created doctrine of obviousness type double patenting and/or under 35 U.S.C. §§ 101 and/or 103.

-11-

42.     The Cabilly II patent is invalid under 35 U.S.C. § 112.

43.     Centocor hereby seeks a declaratory judgment that the Cabilly III patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, *et seq.* and/or under the judicially created doctrine of obviousness type double patenting.

## SECOND CAUSE OF ACTION
## PATENT UNENFORCEABILITY

44.     Centocor incorporates the allegations of paragraphs 1-37 as if fully set forth herein.

45.     An actual controversy has arisen and now exists between the parties concerning the enforceability of the Cabilly II patent.

46.     The Cabilly II patent is unenforceable due to inequitable conduct before the PTO. Such conduct includes, but is not limited to, hiding critical references, failing to act with candor regarding the significance of certain prior art, and failing to advise the PTO of positions taken by Genentech in European patent proceedings that were inconsistent with representations made during prosecution of the Cabilly II Application. On information and belief, the Cabilly Applicants and/or Genentech withheld this material information and made these material representations with intent to deceive the patent examiner.

47.     Centocor hereby seeks a declaratory judgment that the Cabilly II patent is unenforceable due to inequitable conduct.

## THIRD CAUSE OF ACTION
## NON-INFRINGEMENT

48.   Centocor incorporates the allegations of paragraphs 1-31 and 34-37 as if fully set forth herein.

49.   An actual controversy has arisen and now exists between the parties concerning whether Centocor's abciximab or ustekinumab antibody products infringe any valid and enforceable claim of the Cabilly II patent.

50.   Centocor seeks a declaratory judgment that its making, using and selling of its abciximab and ustekinumab antibody products does not and will not infringe any valid and enforceable claim of the Cabilly II patent.

## FOURTH CAUSE OF ACTION
## CENTOCOR OWES NO ROYALTIES

51.   Centocor incorporates the allegations of paragraphs 1-37 as if fully set forth herein.

52.   An actual controversy has arisen and now exists between the parties concerning whether Centocor is entitled to recoup royalties paid to Genentech if the Cabilly II patent is deemed to be unenforceable. "Licensed Products" is defined in the Genentech Agreement to include products that would, if not licensed, infringe one or more claims of the Cabilly II patent "which have neither expired nor been held invalid by a court or other body of competent jurisdiction from which no appeal has been or may be taken." Because invalidity and unenforceability are distinct concepts under U.S. Patent laws, the License Agreement does not require Centocor to pay Genentech royalties on an unenforceable patent. Accordingly, Centocor is entitled to a declaratory judgment that Genentech must repay Centocor

the amounts Centocor paid to Genentech under the Genentech License Agreement based on the Cabilly II patent if that patent is declared to be unenforceable.

53.  An actual controversy has arisen and now exists between the parties concerning whether Centocor is entitled to recoup royalties paid to Celltech and passed through to Genentech and/or City of Hope if the Cabilly II patent is deemed to be invalid or unenforceable. Issues relating to the validity, construction and performance of the Celltech Agreement are governed by English law. The Cabilly II patent may, in accordance with principles of English law, be declared to have been invalid ab initio. Accordingly, Centocor is entitled to a declaratory judgment that Genentech and/or City of Hope must repay Centocor the amounts Celltech passed through under the Celltech Agreement based on Centocor's infliximab (Remicade®) product if the Cabilly II patent is declared to be invalid or unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Centocor requests that judgment be entered in favor of Centocor and against Defendants:

1. Declaring that the Cabilly II patent is invalid;

2. Declaring that the Cabilly II patent is not enforceable;

3. Declaring that Centocor's abciximab and ustekinumab products do not infringe any valid and enforceable claim of the Cabilly II patent;

4. Awarding Centocor damages at least equivalent to any unjust enrichment enjoyed by Genentech and/or City of Hope;

5. Awarding Centocor damages at least equivalent to any amounts received by Genentech and/or City of Hope as royalties or other license fees due on account of the Cabilly II patent;

6. Enjoining Genentech and City of Hope from enforcing the Cabilly II patent;

7. Awarding Centocor its costs and attorneys' fees; and

8. Awarding Centocor such other and further relief as the Court may deem just and proper under the circumstances.

Dated: May 30, 2008

                                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                By _____
                                          Gary A. Clark

                                Attorneys for Plaintiff
                                CENTOCOR, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

**CV08- 3573 PA (AGRx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

GARY A. CLARK, Cal. Bar No. 65455
SHEPPARD, MULLIN, RICHTER & HAMPTON
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448
Telephone: (213) 620-1780
Facsimile: (213) 620-1398

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTOCOR, INC.<br><br>PLAINTIFF(S)<br>v.<br>GENENTECH, INC. and CITY OF HOPE NATIONAL MEDICAL CENTER,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV08-03573 PA (AGRx)<br><br>SUMMONS |

TO:   DEFENDANT(S): City of Hope National Medical Center, et al.

A lawsuit has been filed against you.

Within  20  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Gary A. Clark , whose address is  333 South Hope Street, 48th Floor, Los Angeles, CA 90071-1448 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   MAY 30 2008              By:   LA'REE HORN
                                          Deputy Clerk

(Seal of the Court)

[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].

1192

CV-01A (12/07)                              SUMMONS

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
CENTOCOR, INC.

**DEFENDANTS**
GENENTECH, INC. and CITY OF HOPE NATIONAL MEDICAL CENTER

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Gary A. Clark, Cal. Bar No. 65455, Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor, Los Angeles, CA 90071-1448
(213) 620-1780

**Attorneys** (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify):
- ☐ 6 Multi-District Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No
☐ **MONEY DEMANDED IN COMPLAINT:** $ 0

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Declaratory judgment of patent invalidity, unenforceability, and non-infringement

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 620 Other Food & Drug | ☑ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | | | ☐ 441 Voting | | ☐ 840 Trademark |
| | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | | ☐ 443 Housing/Accommodations | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | | |
| | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____ CV08-03573

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                              CIVIL COVER SHEET                              Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s) _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s) CV 03-02567 MRP (CTx)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☑ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Centocor - San Diego, CA and Pennsylvania |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| City of Hope - Los Angeles | Genentech - San Mateo, Solano, San Diego, CA |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____  **Date** 5/30/08

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |