# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| CENTOCOR ORTHO BIOTECH, INC.<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>GENENTECH, INC. and CITY OF HOPE<br><br>　　　　　Defendants.<br>_____<br>GENENTECH, INC. and CITY OF HOPE<br><br>Counter-Plaintiffs,<br><br>v.<br><br>CENTOCOR ORTHO BIOTECH, INC.<br><br>Counter-Defendant<br><br>AND<br><br>GLOBAL PHARMACEUTICAL SUPPLY GROUP, LLC, CENTOCOR BIOLOGICS, LLC, AND JOM PHARMACEUTICAL SERVICES, INC.<br><br>Third-Party Defendants. | Case No. CV 08-03573 MRP (JEMx)<br><br>**JOINT STIPULATION REGARDING DEFENDANT GENENTECH INC.'S MOTION TO AMEND THE STIPULATED PROTECTIVE ORDER**<br><br>**Discovery Cut-Off:** April 30, 2010<br>**Pretrial Conference:** N/A<br>**Trial Date:** N/A |

# **TABLE OF CONTENTS**

ISSUE IN DISPUTE ......................................................................................................... 1

GENENTECH'S POSITION ........................................................................................... 1

Background ......................................................................................................................... 2

Argument ............................................................................................................................. 4

    1.    Modification is Warranted to Serve the Interests of Collateral Litigation. ................................................................................................................. 5

    2.    The Documents Sought are Plainly Relevant to the Collateral Proceeding. ................................................................................................................ 7

    3.    Centocor Has No Legitimate Interest in Blocking Modification of the Order. ..................................................................................................................... 8

    4.    Common Sense Counsels in Favor of Modification. ................................. 9

Conclusion .......................................................................................................................... 9

CENTOCOR'S POSITION ............................................................................................. 9

Additional Background ................................................................................................... 10

Centocor's Argument ....................................................................................................... 13

    1.    Modification Is *Not* Warranted As There Is *No Collateral Litigation* ............................................................................................................... 13

    2.    The Law Provides For Extra Protection For Third-Parties Like Celltech In This Instance ........................................................................................ 14

    3.    Centocor Has An Interest In Having Its Confidential Information Remain under the Full Protection of The Protective Order ........................ 15

    4.    Modification Is Not Necessary for Genentech's Purposes ...................... 16

Conclusion ........................................................................................................................ 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) ................5, 6, 8

*CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195 (N.D. Cal. 2009)................5, 6

*Contratto v. Ethicon, Inc.*, 227 F.R.D. 304 (N.D. Cal. 2005) ...................................5

*Farm Bureau Mut. Ins. Co. v. AIG, Inc.*, No. 4:03-cv-10050, Dkt. No. 238
   (S.D. Iowa Dec. 30, 2005) ...............................................................................7

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) .........*passim*

*Guzhagin v. State Farm Mutual Automobile Insurance Co.*, No. 07-4650, 2009
   WL 294305 (D. Minn. Feb. 5, 2009)............................................................6, 14

*Olympic Refining Co. v. Carter*, 332 F.2d 260 (9th Cir. 1964)..............................6, 7

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.-N. Dist*, 187 F.3d 1096 (9th Cir.
   1999) ...................................................................................................................5

*Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 214 F.R.D. 583
   (C.D. Cal. 2003)...............................................................................................4, 5

### OTHER AUTHORITIES

Local Rule 37-1 ...........................................................................................................4

*Federal Practice & Procedure* § 2044.1 (3d ed. 2010)..............................................6

Laurie Kratky Dore, *Secrecy by Consent: The Use and Limits of Confidentiality
   in the Pursuit of Settlement*, 74 Notre Dame L. Rev. 283, 366-67 (1999)...........7

Oehmke, *Commercial Arbitration*, § 25:103........................................................... 8

## ISSUE IN DISPUTE

Genentech, Inc. seeks to amend the October 20, 2009 Stipulated Protective Order ("Protective Order") to add the following paragraph so that it can share documents with other outside counsel for purposes of investigating and potentially commencing a collateral arbitration proceeding.

"26.   Notwithstanding the foregoing, certain Confidential Material produced by Centocor consisting of (1) the Patent License Agreement between Celltech Therapeutics Limited ("Celltech") and Centocor dated March 31, 1998; (2) the Patent License Agreement between UCB Pharma S.A./UCB Celltech and Centocor dated October 1, 2008 and all collateral agreements between those parties dated on or around October 1, 2008; (3) correspondence between Centocor and Celltech concerning such agreements; and (4) testimony concerning such agreements (collectively the "Potential Arbitration Material") may be divulged to Williams & Connolly LLP, outside counsel to Genentech, for the purposes of counseling Genentech and, if necessary, noticing and commencing a private AAA arbitration proceeding against UCB Celltech and/or its subsidiaries (the "Genentech/Celltech Arbitration").  The Potential Arbitration Material may be disclosed in the ordinary course of the Genentech/Celltech arbitration only to the parties, the AAA and to such other witnesses or persons agreed to by the parties to the arbitration or ordered by the tribunal.  Within thirty (30) days of the conclusion of the Genentech/Celltech Arbitration, including any appeal therefrom, Genentech shall inform Centocor of the conclusion of the arbitration and Centocor shall have the option to request the procedure enumerated in ¶ 21 of this Stipulated Protective Order, with Genentech able to take advantage of the exceptions contained therein."

## GENENTECH'S POSITION

Genentech, Inc. ("Genentech") seeks a modification of the Protective Order for the limited purpose of allowing it to provide certain discovery materials produced in

1

1  this matter to additional outside counsel in order to allow that counsel to assist
2  Genentech in evaluating and pursuing potential claims in a private arbitration against a
3  third party—UCB Celltech (collectively with its affiliates, "Celltech").  Based on
4  Genentech's review of the discovery materials identified in the proposed modification
5  to the Protective Order (and referred to as "Potential Arbitration Material"), which
6  material was produced by Centocor Ortho Biotech, Inc. ("Centocor") in the pending
7  litigation, Genentech believes that Celltech breached various provisions of the
8  Amended and Restated Collaboration Agreement between Genentech and Celltech
9  dated March 2, 2001 (the "2001 License Agreement"), as well as the covenant of good
10  faith and fair dealing implied in every contract under applicable New York law, by,
11  *inter alia,* entering into a collusive agreement with its sub-licensee Centocor, by
12  which Celltech and  Centocor agreed to treat the sub-license as "terminated," and
13  thereby to deprive Genentech of its share of royalties on sales of Remicade payable by
14  Celltech.

15  Genentech sought to avoid bothering the Court with this Motion, citing to Centocor
16  some of the Ninth Circuit authority encouraging trial courts to modify protective
17  orders in order to avoid slowing down other matters, particularly where (as here) any
18  interest in avoiding public disclosure is more than satisfied by the fact that the
19  documents will be used only in a private, confidential arbitration solely against
20  Celltech, the only other party to the relevant agreements.  *See Foltz v. State Farm Mut.*
21  *Auto. Ins. Co.*, 331 F.3d 1122, 1131-33 (9th Cir. 2003).  Centocor, however, declared
22  itself unable to consent to modify the Protective Order unless Genentech secures the
23  "written approval" of Celltech (a non-party to the Court's Protective Order, but the
24  respondent in any arbitration).  Celltech has not approved.

25  **Background**

26  ***The Protective Order.***  On October 20, 2009, the Court entered a protective
27  order which allows the parties to designate certain discovery materials as
28

"Confidential Material." *See* Protective Order ¶ 4 (attached as Ex. A). Among other restrictions, any document so designated cannot be "used for any purpose other than this action," *id.* ¶ 7(a), nor can it be shared with any of the parties' outside counsel other than counsel of record, *id.* ¶¶ 7-8. The protective order provides that either party may seek to modify it with the consent of the other party or by seeking an order from the Court. *Id.* ¶ 22(b).

***The Reason for this Motion.*** Based on review of the Potential Arbitration Materials, Genentech believes it has claims against Celltech for breaches of the 2001 License Agreement. It wishes to explore these matters with Williams & Connolly LLP, its outside counsel retained for this purpose and, if appropriate, commence a private arbitration proceeding against Celltech.[1] Genentech has put Celltech on notice of four breaches, *see* Ex. C, and now wishes to share with its outside counsel: (1) the Patent License Agreement between Celltech Therapeutics Limited ("Celltech") and Centocor dated March 31, 1998; (2) the Patent License Agreement between UCB and Centocor dated October 1, 2008 and all collateral agreements between those parties dated on or around October 1, 2008; (3) correspondence between Centocor and Celltech about the agreements; and (4) testimony concerning such agreements.

Williams & Connolly has agreed to sign whatever modified confidentiality order is entered, and the possible AAA arbitration between Genentech and Celltech presents no risk of disclosure because it is a private proceeding under the 2001 License Agreement.[2]

---

[1] The 2001 License Agreement provides for AAA arbitration in New York between Genentech and Celltech for claims arising out of that agreement in which "the arbitration proceeding and arbitrator's decision shall be confidential and the arbitral tribunal shall issue appropriate protective orders." 2001 License Agreement at ¶ 8.12(b)(v), Ex. B.

[2] *See* Introductory Guide to AAA Arbitration & Mediation, at 4, *available at* http://www.adr.org/si.asp?id=6030 ("Arbitration, Mediation and other forms of ADR are generally not open to public scrutiny like disputes settled in court. The hearings and awards are kept private and confidential . . . .");

*Genentech's Efforts to Resolve the Matter*.  Genentech wrote Centocor on April 5, 2010 in an effort to avoid bothering the Court with this Motion, reminding Centocor of the case law discouraging parties from using protective orders to slow the progress of collateral litigation.  *See Foltz*, 331 F.3d at 1131 (stating that Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation").  Centocor advised that it would not consent without Celltech's "written approval."  This position was suggestive of a classic run-around; Celltech is not a party to the Court's Protective Order; nor did it produce the documents at issue to Genentech; and Genentech was willing to ensure the discovery materials remained confidential.  But, in another effort to avoid burdening the Court with this Motion, Genentech asked Celltech whether it consented on May 20.  Celltech responded that it was unable to respond on the merits without more information about what possible disputes exist between it and Genentech—despite having received no less than five prior letters putting it on notice of various apparent breaches of the 2001 License Agreement, including claims arising out of the purported 2008 "termination" of the Remicade sub-license.

Pursuant to Local Rule 37-1, Genentech served a meet-and-confer demand letter on Centocor on June 4, 2010.  In the meet-and-confer conference call that occurred on June 14, Genentech repeated its willingness to ensure that the discovery materials remain confidential.  Centocor again refused to consent to the modification, thus requiring the filing of this Motion.

## Argument

The protective order in this case is a blanket order in which the party producing the document determines whether to apply confidential treatment in the first instance "without court intervention."  *Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 214 F.R.D. 583, 586 (C.D. Cal. 2003); *see also* Protective Order ¶¶ 4 & 6.  Such orders "are inherently subject to challenge and modification, as the party resisting

4

disclosure generally has not made a particularized showing of good cause with respect to any individual document." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.-N. Dist*, 187 F.3d 1096, 1103 (9th Cir. 1999). Thus, although Genentech is moving to modify the Protective Order, it is Centocor's burden to demonstrate that the proposed modification affords insufficient protection. *Verizon Cal.*, 214 F.R.D. at 586; *see Foltz*, 331 F.3d at 1130-31 (noting party seeking protection bears the burden of showing "specific" need and finding blanket order to be poor basis for upholding protection); *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308 (N.D. Cal. 2005) (agreeing with *Verizon California* on basis that "*Foltz* is clear").[3]

Genentech's motion to modify the Court's Protective Order should be granted. *First*, the policies in this Circuit strongly favor modification of protective orders to serve the needs of litigants in collateral litigation. *Second*, the documents as to which Genentech seeks to modify the Protective Order go to the heart of the potential collateral litigation and thus amply satisfy the minimal relevance inquiry articulated by the *Foltz* court. *Third*, Centocor has no reliance interest in this blanket protective order that would justify denying modification, especially given the protections of confidential information that would remain. *Fourth*, judicial economy encourages the requested limited modification of the Order. The alternative is to force Genentech to file an arbitration without the benefit of outside counsel's prior review of the materials, and without any opportunity for a resolution of the matter without filing an arbitration proceeding.

### 1. Modification is Warranted to Serve the Interests of Collateral Litigation.

"Ninth Circuit precedent strongly favors disclosure to meet the needs of parties

---

[3] Even if the burden of showing good cause fell on Genentech as the party seeking modification, ample good cause is shown, for the reasons that follow. *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 205-06 (N.D. Cal. 2009) (granting relief under *Foltz* and *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992)).

1  in pending litigation." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th
2  Cir. 1992), *cert. denied sub nom Int'l Ins. Co. v. Bridgestone/Firestone, Inc.*, 506 U.S.
3  868  (affirming order by this Court modifying protective order); *see also, e.g.*, *Foltz*,
4  331 F.3d at 1131-34; *Olympic Refining Co. v. Carter*, 332 F.2d 260, 264-65 (9th Cir.
5  1964), *cert. denied*, 379 U.S. 900  (reversing district court denial of motion to
6  intervene and modify protective order for collateral litigation purposes).  Indeed, it is
7  widely understood that "protective orders need not remain in place permanently, and
8  they are not immutable in their terms. . . .  Where modification is designed to enable
9  litigants to use information in other cases, modification can serve important efficiency
10 and litigation fairness goals."  Charles Alan Wright, Arthur R. Miller, & Richard L.
11 Marcus, 8A *Federal Practice & Procedure* § 2044.1 (3d ed. 2010).  Accordingly, the
12 Protective Order should be modified so that "the fruits of one litigation . . . [will]
13 facilitate preparation in other cases." *Foltz*, 331 F.3d at 1131.  The Ninth Circuit has
14 declared that doing so "advances the interests of judicial economy by avoiding the
15 wasteful duplication of discovery." *Id.*  These issues typically arise in litigation where
16 a third-party litigant in the collateral case moves to intervene so as to access discovery
17 in one case for use in its own. *See, e.g.*, *id.* at 1134; *Beckman*, 966 F.2d at 471-72.  In
18 those cases, courts seek to avoid litigants having to "reinvent the wheel."  8A *Federal*
19 *Practice & Procedure* § 2044.1.  The efficiency gains are even more pronounced here,
20 because Genentech *already has* the discovery it seeks and wishes only to share the
21 materials with counsel to evaluate and prepare a different case.  Thus, denying
22 modification here would impose on Genentech the empty exercise of seeking
23 materials that it already has through the arbitration, to "[]invent the wheel" it has
24 already invented.  *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 205-06
25 (N.D. Cal. 2009) (allowing plaintiff to use discovery in collateral state litigation
26 against same defendant).
27        Courts routinely modify protective orders so that litigants can use discovery in
28 an arbitration.  In *Guzhagin v. State Farm Mutual Automobile Insurance Co.*, No. 07-

4650, 2009 WL 294305 (D. Minn. Feb. 5, 2009), for example, the defendant found itself embroiled in a litigation and several collateral arbitrations, *id.* at *1. The district court affirmed the magistrate judge's decision that it was a waste of litigation resources to require the defendant to retake that discovery in the arbitration, *see id.* at *2, and it modified the protective order so that the defendant could use the discovery if it entered into confidentiality orders prior to using the information (as Genentech proposed to do), *see id.* at *3. *See also Farm Bureau Mut. Ins. Co. v. AIG, Inc.*, Slip Op. at 3 (Ex. D), No. 4:03-cv-10050, Dkt. No. 238 (S.D. Iowa Dec. 30, 2005).

Genentech has a "reasonable need[ ]" to share discovery already in its possession with outside counsel "in other litigation," *i.e.*, a potential arbitration proceeding. *Olympic Refining*, 332 F.2d at 264. The courts in this Circuit have recognized the propriety of modifying protective orders for this purpose since at least 1964. Genentech's motion should be granted.

### 2. The Documents Sought are Plainly Relevant to the Collateral Proceeding.

The Court can readily satisfy itself that "the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings" indicate that the materials at issue may be relevant to the anticipated arbitration. *Foltz*, 331 F.3d at 1132 (quoting Laurie Kratky Dore, *Secrecy by Consent: The Use and Limits of Confidentiality in the Pursuit of Settlement*, 74 Notre Dame L. Rev. 283, 366-67 (1999)). The materials at issue more than satisfy this "rough estimate of relevance." *Id.*

The Potential Arbitration Materials are not just relevant to the additional proceeding, they were the means by which Genentech learned of its potential claims against Celltech and form part of their factual basis. Genentech does not seek to modify the Protective Order with respect to all documents produced by Centocor in this matter: it instead requests a limited modification specifically tailored to Genentech's dispute with Celltech, allowing access to: (a) the two license agreements

between Celltech and Centocor—the one from 1998 that Centocor purportedly "terminated," and the 2008 replacement agreement; (b) agreements and documents evidencing communications between agents of Centocor and Celltech with respect to the two license agreements and (c) deposition testimony discussing these two agreements.

### 3.  Centocor Has No Legitimate Interest in Blocking Modification of the Order.

While the Court should also consider the interests of the party opposing modification, the only interest Centocor could have is its reliance interest in having produced the documents under the previous order. *See Foltz*, 331 F.3d at 1133 (analyzing parties' interests and addressing reliance interest); *Beckman*, 966 F.2d at 475-76. Because "'reliance will be less with a blanket protective order, because it is by nature over-inclusive,'" the Ninth Circuit has held that "reliance on a blanket protective order in granting discovery . . . , without more, will not justify a refusal to modify." *Foltz*, 331 F.3d at 1133 (alterations omitted) (quoting *Beckman*, 966 F.2d at 475).

Moreover, "[a]ny legitimate interest . . . in continued secrecy as against the public at large can be accommodated by placing [Genentech] under the same restrictions on use and disclosure contained in the original protective order." *Id.* at 1133 (second alteration added) (quoting *United Nuclear*, 905 F.2d at 1428). Genentech has already offered to have Williams & Connolly sign any stipulation, order, or agreement to keep the materials confidential. Genentech's additional litigation counsel has appeared before this Court (in the *MedImmune v. Genentech et al.* litigation), complied in all respects with prior protective orders of the Court, and is willing to execute any modified order that allows counsel to assist Genentech. And the materials would then be used only in a private arbitration. *See* Oehmke, *Commercial Arbitration*, § 25:103 ("The privacy of arbitration is a kingpin of its attractiveness."); 2001 License Agreement at ¶ 8.12(b)(v), Ex. B.

### 4. Common Sense Counsels in Favor of Modification.

Genentech has proposed a change to the Protective Order that is calculated to preserve the legitimate interests of a protective order—avoiding public disclosure and competitive injury. *See* Protective Order, "Good Cause Statement" (a)-(k). No competitive injury is possible, because the materials are already familiar to all the participants: Centocor was the original counter-party to the agreements and communications at issue, and produced them in discovery in this proceeding; Celltech of course is the other party to the agreements and communications; and Genentech has already reviewed these materials because they were produced in this litigation. Genentech is of course not seeking to use the information in question in the competitive marketplace or to broadcast it to the public. It seeks only to obtain advice from outside counsel who will be bound by whatever protective order the Court enters, and if necessary to pursue claims in a private arbitration.

It would be hard to imagine a stronger case for modifying a protective order than the present circumstance where: the only party who would gain access to the materials by the requested modification already has them; the party opposing modification can be motivated only by its role in the conduct at issue in the collateral proceeding; and the collateral proceeding is one governed by strict confidentiality even before it is instituted. A protective order is meant to shield information from public disclosure, not to shield a litigant from potential claims.

### Conclusion

For the foregoing reasons, the motion to modify the Protective Order should be granted.

### CENTOCOR'S POSITION

Genentech asks this Court to modify the Protective Order in this case so that it can do exactly what the parties agreed could ***not*** be done when that Order was

negotiated. When the parties negotiated the Protective Order they expressly agreed in numerous provisions that Confidential Material provided during discovery "is not to be copied or used except for the limited purpose of conducting this litigation." Genentech, however, now wants to do exactly the opposite – it wants to take information which is confidential not only to party Centocor but also to third party Celltech outside of this case in an attempt to have its outside lawyers drum-up claims against Celltech. As Genentech's reasons for modification ring hollow, this Court should continue to enforce the terms of its Protective Order and deny Genentech's motion to modify the order for purposes of what is nothing more than a fishing expedition.

## Additional Background

*The Protective Order.* The Protective Order in this case was negotiated between the parties over many months. In fact, it was not until almost seventeen months after this case was filed that the parties were able to agree on a Protective Order to be presented to the Court for entry. Among the provisions agreed to as part of that negotiation between the parties are the following:

> Categories of "Confidential" documents, information, or other discovery that the parties may seek to designate under this Protective Order include the following: (a) Information that is the subject of a non-disclosure or confidentiality agreement or obligation;
>
> . . .
>
> (i) Information relating to . . . actual or potential licensing of intellectual property or technology; and licensing policies, practices, or strategies.

(Ex. A at 3, 5).

10

The parties also agreed in no fewer than three different provisions in the Protective Order that under no circumstances was the Confidential Information exchanged in this case to be used outside of this litigation:

> 4. . . . Confidential Material, designated as such in accordance with this Order, shall be disclosed or made available only to persons specified in Paragraphs 7 and 8 herein, and *is not to be copied or used except for the limited purpose of conducting this litigation*, including preparing exhibits for affidavits, depositions, hearings, or for trial.
>
> 7. (a) Confidential Material, and any analysis or report containing Confidential Material, *shall not be made public by the Receiving Party nor used for any purpose other than this Action*…
>
> 12. The information produced by the parties or a non-party pursuant to pretrial discovery in this Action *may be used and disclosed only for purposes of this Action*.

(Ex. A) (emphasis added).

***Background of the Production of the Celltech Agreements and Collateral Materials.*** Because the 2008 Celltech/Centocor agreements contained confidentiality provisions that restricted their disclosure absent Celltech's prior consent, which Celltech had not provided, Centocor originally refused to produce them. Such a refusal is not unprecedented in this case; Genentech has refused to produce several agreements in which it has licensed the patent-in-suit to third parties because of confidentiality restrictions in those agreements. Ultimately, Centocor produced the agreements and collateral materials to Genentech only after the Court ordered their

production in response to Genentech's ex parte application (Ex. E). Genentech argued at the time that it needed access to the agreements in conjunction with contract issues then being briefed in this case (having to do with the scope of the covenant-not-to-sue Genentech granted to Centocor in a 1994 agreement). Not surprisingly (since, as Centocor explained at the time, the 2008 Centocor/Celltech Agreements could have no bearing on the scope of a covenant-not-to-sue granted by Genentech to Centocor in 1994), Genentech made only one passing reference to the agreements in a footnote in its briefing on the covenant-not-to-sue issues.

What is now apparent is that Genentech has used the 2008 Celltech agreements and collateral materials ("Potential Arbitration Materials") in direct violation of the Stipulated Protective Order in this case which provides that Confidential Material cannot be "used for any purpose other than this action" (Ex. A at ¶ 7(a), emphasis added). Genentech states that, based on its review of these materials, it believes it has a claim against Celltech and that the Materials "were the means by which Genentech learned of its potential claims against Celltech and form part of their factual basis." Having already violated the Protective Order, Genentech now seeks to amend the Order, in essence, to allow it to reap the benefits of its violations.

*Genentech's Purported "Efforts" to Resolve This Matter.* In its portion of the brief, Genentech attempts to suggest that it went to great lengths to "avoid bothering the Court with this Motion." Genentech's tactics on this entire issue, however, suggest the opposite. From the very beginning of this dispute, Genentech has evaded both Centocor's and Celltech's requests to identify exactly what it is that Genentech seeks to disclose to the lawyers at Williams and Connolly whom it has hired to try to patch together a claim against Celltech. It was not until *after* Genentech and Centocor held a meet and confer on this issue and *after* Genentech provided Centocor with its portion of this motion that Genentech identified the Celltech-Centocor communications that it seeks to disclose.

Genentech also seeks to disclose testimony of Centocor witnesses Ken Dow and

1  Nicholas Daleandro, yet, in spite of requests for it to do so, Genentech is still refusing
2  to identify what portions of those depositions it seeks to include as part of its endeavor
3  (Ex. F).  Simply put, waiting until after it has drafted its motion to identify some (and
4  not even all) the materials it seeks to disclose to its outside lawyers and to use for
5  purposes outside this litigation does not reflect a party that wanted to avoid this
6  motion.

## Centocor's Argument

Genentech's motion to allow Confidential Information of Centocor and third-party Celltech to be disclosed to lawyers at Williams and Connolly should be denied for numerous reasons.  First, Genentech fails to cite to a single case indicating that a court should modify a protective order to permit one party to use another party's confidential information for purposes of trying to craft claims to assert against a third-party.  Second, Celltech, the third-party that Genentech seeks to try to craft claims against, deserves special protection in this instance as it is not a party to this litigation and its confidential information is at stake here as well.  Third, Centocor has an interest in protecting its Confidential Information from disclosure.  Fourth, Genentech admits that it does not need this modification to pursue any alleged claims against Celltech. Accordingly, Genentech's motion should be denied.

      1.     **Modification Is *Not* Warranted As There Is *No Collateral Litigation***

Genentech relies on a number of cases allegedly supporting the modification of a protective order for "collateral litigation purposes."  Genentech, however, misses one simple point – that case law is wholly inapplicable here as there is *no collateral litigation* pending.

Genentech has failed to provide a single case where a court permitted modification of a Protective Order for purposes of allowing lawyers access to materials to try to craft together claims against a third-party.  With no law to support its position, Genentech erroneously relies on cases such as *Foltz v. State Farm Mut.*

1  *Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003). Yet *Foltz* involved a situation where
2  there was a collateral action filed after the settlement of an earlier case and certain
3  parties to the collateral action moved to seek access to discovery materials from the
4  earlier case. These are certainly not the facts here. What Genentech seeks to do here
5  is to modify the Protective Order for purposes of *trying to bring a collateral action*.
6  But *Fultz* provides no support for Genentech's attempts to do that.

7        Genentech's remaining "support" for its position is equally misplaced. For
8  example, Genentech cites to *Guzhagin v. State Farm Mutual Automobile Insurance
9  Co.*, No. 07-4650, 2009, WL 294305 (D. Minn. Feb. 5, 2009), yet acknowledges that
10 the case involved a defendant "embroiled in a litigation and several collateral
11 arbitrations" and the purpose of the modification was to prevent the defendant from
12 retaking certain discovery. Again, however, this is not the case here. Genentech is not
13 seeking to preserve resources by using discovery from one proceeding in another
14 pending proceeding. It is seeking to use confidential information from one action so
15 that its hired lawyers can attempt to find a basis to bring a "collateral litigation."

16       Genentech starts its entire legal section by pointing out that "Ninth Circuit
17 precedent strongly favors disclosure to meet the needs of parties *in pending
18 litigation*." The alleged litigation against Celltech is *not pending anywhere* making all
19 of Genentech's legal support irrelevant. In fact, Genentech's reliance on these
20 inapplicable cases means one thing – it has no legal support for what it seeks to do.

21       **2.    The Law Provides For Extra Protection For Third-Parties Like Celltech In This Instance**

22       The information that Genentech seeks to disclose is not only Centocor's
23 Confidential Information, it is Celltech's as well. Celltech, however, is not a party to
24 this litigation and, in fact, it does not appear that Genentech ever provided notice to
25 Celltech that it was making this motion. In instances such as these, however, the
26 Court should afford special protections to a third party.

27       Celltech entered into agreements with Centocor with the understanding that
28

14

Joint Stipulation re Defendants' Notice of Motion and Motion To
Amend the Stipulated Protective Order

1  they would be maintained confidential.  Those agreements were produced to
2  Genentech in this action under Court order but also subject to the protections of the
3  Protective Order.  Genentech has already violated the terms of that Order by using the
4  Confidential Celltech agreements and related materials for purposes of trying to trump
5  up claims against Celltech.  Now it wants to go even farther and use the materials in
6  an arbitration it hopes to institute against Celltech.  If the terms of any arbitration
7  agreement between Celltech and Genentech allow for document discovery, then
8  Genentech can seek the materials directly from Celltech in that proceeding.  But,
9  respectfully, the confidentiality expectations of Celltech when it entered into its
10 agreements with Centocor should not be undone by this Court in this lawsuit.
11 Modifying the Protective Order here to allow Genentech to make use of Confidential
12 materials against third party Celltech would set a precedent undermining the valid
13 expectations that any third party should have about the protection of its Confidential
14 Information when it is produced in a lawsuit to which it is not a party.

### 3. Centocor Has An Interest In Having Its Confidential Information Remain under the Full Protection of The Protective Order

17  Centocor also has an interest in preventing Genentech's modification to the
18 Protective Order.  For example, the two new Centocor-Celltech agreements that
19 Genentech seeks to disclose each have confidentiality provisions that restrict
20 disclosure of the agreements' terms absent Celltech's prior written consent. As
21 Genentech acknowledges in its motion, Celltech has not provided that consent.
22 Similarly, with regard to the correspondence that Genentech seeks to disclose, that too
23 is subject to confidentiality provisions present in the 1998 Centocor-Celltech
24 agreement. Again, Celltech has not provided its consent for disclosing these
25 documents.  Centocor has an interest in preventing Genentech from forcing what is
26 essentially a breach of that agreement by virtue of its desire to have outside lawyers at
27 Williams and Connolly conduct a fishing expedition.

### 4. Modification Is Not Necessary for Genentech's Purposes

Nowhere does Genentech state that modification of the Protective Order is necessary for it to pursue its alleged claims against Celltech. In fact, Genentech admits that this is not the case: "The alternative is to force Genentech to file an arbitration without the benefit of outside counsel's prior review of the materials . . . ." Thus, Genentech is free to file whatever claims it believes it has against Celltech and to seek discovery as part of that collateral proceeding to the extent allowed. If the arbitration agreement between Genentech and Celltech limits discovery, then Genentech should not be able to avoid that limitation by using information it requested in this lawsuit for different purposes. There is simply no need for the Court to modify the Protective Order here as Genentech admits that it is still able to file its arbitration against Celltech without the proposed modification.

### Conclusion

Genentech's motion should be denied. Genentech has failed to provide any legal support for allowing modification of a protective order to allow one party's confidential information to be used to conduct a fishing expedition to try to craft claims to bring against a third-party. The Protective Order that the parties negotiated and agreed to should remain unchanged.

| | | |
|---|---|---|
| 1 | DATED:  June 28, 2010 | Respectfully submitted, |
| 2 | | |
| 3 | | By:  /s/ Marcus E. Sernel |
| 4 | | Mark A. Pals, P.C.<br>Marcus E. Sernel |
| 5 | | KIRKLAND & ELLIS LLP |
| 6 | | 300 North LaSalle Street<br>Chicago, IL 60654 |
| 7 | | |
| 8 | | Daralyn J. Durie<br>Mark Lemley |
| 9 | | DURIE TANGRI PAGE LEMLEY<br>  ROBERTS & KENT LLP |
| 10 | | 332 Pine Street, Suite 200<br>San Francisco, CA  94104 |
| 11 | | |
| 12 | | *Attorneys for Genentech, Inc.* |
| 13 | | |
| 14 | | By:   /s/ Steven D. Maslowski<br>   Dianne B. Elderkin |
| 15 | | Barbara L. Mullin<br>Steven D. Maslowski |
| 16 | | Angela Verrecchio<br>Matthew A. Pearson |
| 17 | | Ruben H. Munoz<br>AKIN GUMP STRAUSS HAUER |
| 18 | | & FELD LLP<br>2001 Market St., Suite 4100 |
| 19 | | Philadelphia, PA 19103-7013 |
| 20 | | *Attorneys for Centocor Ortho Biotech,* |
| 21 | | *Inc. and the related third-party Defendants* |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |