# EXHIBIT 9

EXHIBIT 9 - PAGE 000376

GARY A. CLARK, Cal. Bar No. 65455
gclark@sheppardmullin.com
DARREN M. FRANKLIN, Cal. Bar No. 210939
dfranklin@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 48th Floor
Los Angeles, California  90071-1448
Telephone:  (213) 620-1780
Facsimile:  (213) 620-1398

Attorneys for Plaintiff
CENTOCOR, INC.

Of Counsel:

Dianne B. Elderkin (*pro hac vice* pending)
elderkin@woodcock.com
Barbara L. Mullin (*pro hac vice* pending)
mullin@woodcock.com
WOODCOCK WASHBURN LLP
2929 Arch Street, 12th Floor
Philadelphia, Pennsylvania 19104
Telephone:  (215) 568-3100
Facsimile:  (215) 568-3439

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CENTOCOR, INC.,<br><br>              Plaintiff,<br><br>      v.<br><br>GENENTECH, INC. and CITY OF HOPE NATIONAL MEDICAL CENTER,<br><br>              Defendants. | Case No. CV08-03573 PA (AGRx)<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Centocor, Inc. ("Centocor"), for its complaint, alleges as follows:

## NATURE OF THE CASE

1. In this action, Centocor seeks a declaration that U.S. Patent No. 6,331,415 (the "Cabilly II patent") is invalid, unenforceable and/or not infringed by Centocor's abciximab and ustekinumab antibody products.

## THE PARTIES

2. Centocor is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business in Horsham, Pennsylvania.

3. On information and belief, Genentech, Inc. ("Genentech") is a Delaware corporation with its principal place of business in South San Francisco, California.

4. On information and belief, City of Hope National Medical Center ("City of Hope") is a California not-for-profit organization with its principal place of operation in Duarte, California.

5. On information and belief, Genentech and City of Hope are co-assignees of the Cabilly II patent.

## JURISDICTION AND VENUE

6. This action arises under the Declaratory Judgment Act, Title 28 of the United States Code, Chapter 151, for the purpose of determining an actual and justiciable controversy between the parties hereto. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.  This Court has personal jurisdiction over Genentech based on its principal place of business in California. This Court has personal jurisdiction over City of Hope based on its organization under the laws of the state of California and because its principal place of operation is in California.

8.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c), and (d).

## THE CABILLY PATENTS

9.  On April 8, 1983, Shmuel Cabilly, Herbert Heyneker, William Holmes, Arthur Riggs and Ronald Wetzel (the "Cabilly Applicants") filed a patent application in the United States Patent and Trademark Office ("PTO") that issued on March 28, 1989, as U.S. Patent No. 4,816,567 (the "Cabilly I patent"). On information and belief, the Cabilly Applicants assigned their rights to Genentech and/or City of Hope.

10. On the same day that the Cabilly I patent issued, U.S. Patent No. 4,816,397 (the "Boss patent") issued to Michael Boss, John Kenten, John Emtage and Clive Wood (the "Boss Applicants"). On information and belief, the Boss Applicants assigned their rights to Celltech Therapeutics Limited ("Celltech"). Celltech is a British company with its principal place of business in Slough, England.

11. At the time that the Boss and Cabilly I patents issued, the Cabilly Applicants had a continuation application pending in the PTO (the "Cabilly II application"). The Cabilly Applicants copied claims from the Boss patent in order to provoke the PTO Board of Patent Appeals & Interferences to initiate an interference proceeding to determine priority – i.e., to determine whether it was the Cabilly Applicants or the Boss Applicants who had made the purported invention first.

Case 2:08-cv-03573-MRP -JEM   Document 250-9   Filed 07/12/10   Page 5 of 16   Page ID #:5191

12. In February 1991, the PTO Board declared a patent interference between the pending Cabilly II application and the Boss patent on the basis that both claimed the same purported invention.

13. After years of adversarial proceedings in the PTO, in August 1998, the PTO Board found that the Boss patent was entitled to priority over the Cabilly II application. The Final Decision indicated that the Cabilly Applicants were "not entitled to a patent . . . ."

14. In October 1998, Genentech filed a civil action to appeal the decision of the PTO Board awarding priority to the Boss patent (Genentech, Inc. v. Celltech Ltd., Case no. C98-3926 (N.D. Cal.)). In March 2001, the parties to that action filed a notice of settlement and joint request for entry of settlement instruments. As part of their settlement, the parties asked the district court to find that Genentech won the priority contest. The district court then issued an order directing the PTO to vacate its determination that the Boss Applicants were entitled to priority, to revoke the Boss patent, and to issue a patent on the Cabilly II application.

15. After the district court issued its order to the PTO, the PTO referred the Cabilly II application to an examiner for further action, including consideration of materials previously submitted to the PTO that had not clearly been considered by the examiner.

16. One of the papers submitted by the Cabilly Applicants prior to declaration of the interference was an Information Disclosure Statement that identified, among other references, Valle et al., Nature, 300:71-74 (1982). In its Information Disclosure Statement, the Cabilly II Applicants characterized this

reference as being cited as part of a group of references identified "in the interests of good order" because it was cited during prosecution of the Cabilly I application. The Cabilly Applicants also expressly represented that the Valle (1982) work "is readily distinguishable from the instant claims in that the oocytes are not transformed with DNA, but instead are used to transiently express mRNA preparations." (Sept. 18, 1991 IDS at page 2). This Information Disclosure Statement was signed by a representative of Genentech. This representation, however, contradicted a representation Genentech had made about the Valle (1982) reference when it was opposing Celltech's European Boss patent.

17. During the time that Genentech and Celltech were involved in the interference proceeding, Genentech submitted an opposition to Celltech's European patent (EP-B-0120694), the European patent corresponding to the Boss patent. The claims in the Celltech European Boss patent and the claims in the Cabilly II application were both directed, inter alia, to processes for producing a heterologous Ig molecule in a single host cell comprising transforming the host cell with separate DNA sequences encoding polypeptide chains comprising at least the variable domains of the heavy and light chains and then expressing those chains separately in the transformed host cell.

18. As part of the grounds for opposition in the European proceeding, Genentech identified the Valle (1982) publication as a reference that anticipated the Boss European patent. Contrary to the characterization of this reference during the Cabilly II application prosecution, Genentech specifically represented to the European Patent Office that Valle (1982):

> clearly teaches the production of an immunologically
> functional heterologous immunoglobulin molecule in
> eukaryotic cells transfected by separate DNA molecules

1  encoding its heavy and light chains, respectively. In view
2  of the broad implications evidenced by the Abstract, the
3  fact that the actual experiment was performed with
4  microinjected mRNAs is not relevant. In any event,
5  because the messenger RNA carries the information from
6  DNA to the ribosomal sites of protein synthesis, it is
7  functionally equivalent to DNA.

9      19. Thus, when it was in its interest to do so during its opposition to
10 Celltech's European Boss patent, Genentech took the position that the Valle (1982)
11 reference clearly teaches the production of an immunologically functional
12 heterologous immunoglobulin molecule in eukaryotic cells transfected by separate
13 DNA molecules encoding its heavy and light chains, whereas during the prosecution
14 of the Cabilly II application, it was asserted that the Valle (1982) reference was
15 "readily distinguishable" because the oocytes were not transformed with DNA.

17     20. The Valle (1982) reference was, by Genentech's own assertions,
18 material to the patentability of at least some of the subject matter common to the
19 Cabilly II application and Boss patent claims. But the Cabilly Applicants did not
20 advise the Examiner that Genentech had relied upon this Valle (1982) reference in
21 opposing the Boss European patent, nor did it advise the Examiner of the contrary
22 positions that it had taken in the European opposition proceeding with respect to the
23 teachings of the Valle (1982) reference.

25     21. The Information Disclosure Statement submitted by the Cabilly
26 Applicants prior to declaration of the interference also identified, among other
27 references, Rice et al., Proc. Natl. Acad. Sci. 77:7862-7865 (1982). In its
28 Information Disclosure Statement, the Cabilly II Applicants characterized this

-6-

1  reference as being cited as part of a group of references identified "in the interests of
2  good order" because it was cited during prosecution of the Cabilly I application and
3  indicated that they were not providing a copy of this reference.

5        22.    The citation provided to the PTO was, however, in error. When
6  opposing the Celltech European Boss patent, Genentech cited Rice et al., Proc. Natl.
7  Acad. Sci. 79:7862-7865 (1982), and argued that the subject matter of the European
8  Boss patent did not involve an inventive step over this disclosure in view of other
9  references.

11       23.    Thus, although the Rice (1982) reference was, by Genentech's
12 own assertions, material to the patentability of at least some of the subject matter
13 common to the Cabilly II application and Boss patent claims, the Cabilly Applicants
14 did not advise the Examiner that: (a) Genentech had relied upon this Rice (1982)
15 reference in opposing the Boss European patent; (b) that Genentech argued that the
16 Boss European patent did not involve an inventive step in view of this and other
17 references; or (c) that it had mis-cited this reference in its Information Disclosure
18 Statement. This information was material to the prosecution of the Cabilly II patent.

20       24.    Also, during this post-interference and post-district court action
21 prosecution of the Cabilly II application (the "post-proceeding prosecution"), the
22 Cabilly Applicants submitted a substantial amount of material to the PTO, including
23 listings of numerous pleadings from the litigation as well as numerous prior art
24 references. Pursuant to the express provisions of the Manual of Patent Examining
25 Procedure, submission of such long lists should be avoided but, if necessary, then
26 Applicants are directed to "highlight" the documents known to be of most
27 significance. MPEP 2004(13). The Cabilly II Applicants did not do so.

25. Although the Cabilly II Applicants dumped numerous references on the PTO, they failed to identify critical prior art, including U.S. Patent No. 4,399,216, issued to Axel et. al. on August 16, 1983, assigned on its face to The Trustees of Columbia University (the "'216 patent"). On information and belief, the '216 patent was known to Genentech, and its materiality to the Cabilly II claims and recombinant production of antibodies in general was known to Genentech, at least based on the fact that Genentech had taken a license of this patent for which it paid substantial royalties.

26. The Cabilly II patent issued on December 18, 2001, and is assigned on its face to Genentech. The Cabilly II patent is presently under Reexamination (Control No. 90/007,542) at the PTO, where all claims of the Cabilly II patent are currently under final rejection. The bases for rejection include obviousness-type double patenting.

27. That the Rice (1982) reference is material to the patentability of the Cabilly II patent claims is confirmed by the fact that it is has been relied upon by the PTO in rejecting the Cabilly II patent claims during the reexamination proceeding.

28. That the '216 patent is material to the patentability of the Cabilly II patent claims is confirmed by the fact that it is has been relied upon by the PTO in rejecting the Cabilly II patent claims during the reexamination proceeding.

29. The foregoing provides examples of actions demonstrating that, during examination of the Cabilly II Application, while under a duty of candor to the PTO, Genentech and/or the Cabilly Applicants intended to mislead the PTO and did not act in good faith in dealing with the PTO. Intent can be inferred at least from the

1 fact that Genentech failed to disclose statements and references which, by its own
2 assertions in the Boss European Opposition proceedings, were material to the
3 patentability of the Cabilly II application claims.
4

## THE LICENSE AGREEMENTS

**Abciximab (ReoPro®)**

30. On December 5, 1994, Centocor entered into an Agreement with Genentech under which it received, inter alia, a license under the Cabilly I patent and under the application which ultimately issued as the Cabilly II patent to make, have made, use, and sell substances capable of binding to the GPIIb IIIa receptor which, but for the license, would infringe one or more claims of the patents (the "Genentech Agreement"). Centocor has paid, and Genentech has accepted, royalties on sales of abciximab, an antibody fragment which binds to the glycoprotein GPIIb IIIa of human platelets and inhibits platelet aggregation.

31. There is an actual and justiciable controversy between Centocor, Genentech and City of Hope with respect to whether making, using and selling abciximab infringes any valid and enforceable claim of the Cabilly II patent.

**Infliximab (Remicade®)**

32. On March 31, 1998, Centocor entered into a Patent License Agreement with Celltech under which it received, inter alia, a non-exclusive sublicense under the "Genentech Licensed Patents," which included the Cabilly I patent and any patents maturing from applications that were continuations of the Cabilly I patent, which includes the later-issued Cabilly II patent (the "Celltech Agreement"). This was a license to develop, make, have made, use and sell a pharmaceutical product containing a recombinant engineered antibody or antibody fragment capable of binding specifically to TNF-alpha, being both the product later

-9-

marketed by Centocor as infliximab (Remicade®) and one additional product whose research and development was conducted under the direction of Centocor by itself or in collaboration with a third party.

33. On information and belief, at least a portion of the royalties that Centocor pays to Celltech based on its infliximab (Remicade®) product are passed through to Genentech and/or City of Hope.

**Ustekinumab (CNTO-1275)**

34. Ustekinumab (CNTO 1275) is a new, human monoclonal antibody developed by Centocor which targets the cytokines interleukin-12 (IL-12) and interleukin-23 (IL-23), naturally occurring proteins that are important in regulating immune responses and that are thought to be associated with some immune-mediated inflammatory disorders, including psoriasis.

35. All Phase III clinical trials believed necessary to support an application for approval to sell ustekinumab in the United States have been completed. In February 2008, the Biologics License Application (BLA) for ustekinumab (CNTO 1275) was accepted for review by the U.S. Food and Drug Administration for the treatment of chronic moderate-to-severe plaque psoriasis in adults. Centocor expects to obtain regulatory approval to market and sell ustekinumab in the United States within the next year.

36. Centocor has been making substantial preparations to market and sell ustekinumab in the United States upon receipt of regulatory approval to do so. It has hired and been training key management, support and sales personnel to market and sell ustekinumab; retaining outside consultants and vendors to assist in its marketing and sale of ustekinumab in the United States; has retained suppliers and

1 advertising agencies to prepare for the launch of the product; has prepared
2 promotional materials for the launch of the product; has initiated planning for medial
3 affairs and pharmacovigilance activities associated with the marketing of the product;
4 has built supply capacity; and is completing manufacturing and distribution launch
5 preparations.

7     37. Genentech has advised Centocor that its existing licenses would
8 not cover the marketing and sale of ustekinumab and has acknowledged that
9 Centocor will need an additional license from Genentech under the Cabilly II patent
10 for ustekinumab. There is an actual and justiciable controversy between Centocor,
11 Genentech, and City of Hope with respect to whether Centocor's making, using and
12 selling of ustekinumab will infringe any valid and enforceable claim of the Cabilly II
13 patent.

## FIRST CAUSE OF ACTION
## PATENT INVALIDITY

17     38. Centocor incorporates the allegations of paragraphs 1-37 as if
18 fully set forth herein.

20     39. An actual controversy has arisen and now exists between the
21 parties concerning the validity of the Cabilly II patent.

23     40. The Cabilly II patent is invalid because it is anticipated and/or
24 obvious under 35 U.S.C. §§ 102 and 103.

26     41. The Cabilly II patent is invalid based on the judicially created
27 doctrine of obviousness type double patenting and/or under 35 U.S.C. §§ 101 and/or
28 103.

42. The Cabilly II patent is invalid under 35 U.S.C. § 112.

43. Centocor hereby seeks a declaratory judgment that the Cabilly III patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, *et seq.* and/or under the judicially created doctrine of obviousness type double patenting.

## SECOND CAUSE OF ACTION
## PATENT UNENFORCEABILITY

44. Centocor incorporates the allegations of paragraphs 1-37 as if fully set forth herein.

45. An actual controversy has arisen and now exists between the parties concerning the enforceability of the Cabilly II patent.

46. The Cabilly II patent is unenforceable due to inequitable conduct before the PTO. Such conduct includes, but is not limited to, hiding critical references, failing to act with candor regarding the significance of certain prior art, and failing to advise the PTO of positions taken by Genentech in European patent proceedings that were inconsistent with representations made during prosecution of the Cabilly II Application. On information and belief, the Cabilly Applicants and/or Genentech withheld this material information and made these material representations with intent to deceive the patent examiner.

47. Centocor hereby seeks a declaratory judgment that the Cabilly II patent is unenforceable due to inequitable conduct.

-12-

## THIRD CAUSE OF ACTION
## NON-INFRINGEMENT

48. Centocor incorporates the allegations of paragraphs 1-31 and 34-37 as if fully set forth herein.

49. An actual controversy has arisen and now exists between the parties concerning whether Centocor's abciximab or ustekinumab antibody products infringe any valid and enforceable claim of the Cabilly II patent.

50. Centocor seeks a declaratory judgment that its making, using and selling of its abciximab and ustekinumab antibody products does not and will not infringe any valid and enforceable claim of the Cabilly II patent.

## FOURTH CAUSE OF ACTION
## CENTOCOR OWES NO ROYALTIES

51. Centocor incorporates the allegations of paragraphs 1-37 as if fully set forth herein.

52. An actual controversy has arisen and now exists between the parties concerning whether Centocor is entitled to recoup royalties paid to Genentech if the Cabilly II patent is deemed to be unenforceable. "Licensed Products" is defined in the Genentech Agreement to include products that would, if not licensed, infringe one or more claims of the Cabilly II patent "which have neither expired nor been held invalid by a court or other body of competent jurisdiction from which no appeal has been or may be taken." Because invalidity and unenforceability are distinct concepts under U.S. Patent laws, the License Agreement does not require Centocor to pay Genentech royalties on an unenforceable patent. Accordingly, Centocor is entitled to a declaratory judgment that Genentech must repay Centocor

the amounts Centocor paid to Genentech under the Genentech License Agreement based on the Cabilly II patent if that patent is declared to be unenforceable.

53. An actual controversy has arisen and now exists between the parties concerning whether Centocor is entitled to recoup royalties paid to Celltech and passed through to Genentech and/or City of Hope if the Cabilly II patent is deemed to be invalid or unenforceable. Issues relating to the validity, construction and performance of the Celltech Agreement are governed by English law. The Cabilly II patent may, in accordance with principles of English law, be declared to have been invalid ab initio. Accordingly, Centocor is entitled to a declaratory judgment that Genentech and/or City of Hope must repay Centocor the amounts Celltech passed through under the Celltech Agreement based on Centocor's infliximab (Remicade®) product if the Cabilly II patent is declared to be invalid or unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Centocor requests that judgment be entered in favor of Centocor and against Defendants:

1. Declaring that the Cabilly II patent is invalid;

2. Declaring that the Cabilly II patent is not enforceable;

3. Declaring that Centocor's abciximab and ustekinumab products do not infringe any valid and enforceable claim of the Cabilly II patent;

4. Awarding Centocor damages at least equivalent to any unjust enrichment enjoyed by Genentech and/or City of Hope;

1         5.   Awarding Centocor damages at least equivalent to any amounts received by Genentech and/or City of Hope as royalties or other license fees due on account of the Cabilly II patent;

          6.   Enjoining Genentech and City of Hope from enforcing the Cabilly II patent;

          7.   Awarding Centocor its costs and attorneys' fees; and

          8.   Awarding Centocor such other and further relief as the Court may deem just and proper under the circumstances.

Dated: May 30, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
              Gary A. Clark

Attorneys for Plaintiff
CENTOCOR, INC.