# EXHIBIT 42

EXHIBIT 42 - PAGE 001340

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

| Presiding: The Honorable | **GEORGE H. KING, U.S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

None                                                                  None

**Proceedings:** **(In Chambers) Order re:** Joint Motion for Summary Judgment

Plaintiff Roger Plumley ("Plumley") is the owner of U.S. Patent No. 5,167,047 (the "'047 patent"), entitled "Wire Management Grommet." The patent claims a device with a pivoting closure tab that allows wires, such as computer cords, to pass through the underside of a piece of furniture, such as a desk. Use of the grommet, and similar inventions, frees available workspace and reduces eyesores by discretely routing such computer cords directly to their intended destination rather than running them along the surface of the desk. Plumley brought suit against Defendants Doug Mockett ("Mockett"), Doug Mockett & Company, Inc. ("DMC"), and Inland Plastics, Inc. ("Inland" and, collectively, "Defendants") on April 23, 2004, charging Defendants with willfully infringing the '047 patent through their manufacture and distribution of the Mockett "flip-top" grommet, the accused device.

Although Plumley has been aware of potential infringement by Mockett and DMC since, at least, August 1993, these Parties have been embroiled in litigation concerning the '047 patent since that time. Indeed, in December 1993 Mockett initiated a patent interference before the Patent and Trademark Office ("PTO"), alleging that Plumley derived the design for the pivot-tab grommet described in the '047 patent from Mockett. In the ensuing years the Parties were involved in four reexamination proceedings before the PTO and two 35 U.S.C. § 146 actions in this Court. In California state court, Mockett filed suit for unfair competition against Plumley, and in turn Plumley brought a malicious prosecution action against Mockett. In February 2005, we stayed the instant infringement action pending reexamination proceedings before the PTO. Since lifting the stay in October 2007, we have denied Defendants summary judgment on their affirmative defenses of laches and equitable estoppel and construed disputed claim terms in the '047 patent. (Dkt. Nos. 112, 151).

Plumley now moves for partial summary judgment of literal infringement and patent validity, and against Defendants' affirmative defenses of laches, equitable estoppel, and inequitable conduct. Defendants have filed cross motions for partial summary judgment of patent invalidity and for a finding of no willful infringement. Plumley also raises a threshold issue regarding Defendants' arguments on summary judgment; namely, the admissibility of three declarations by Defendants' experts. We have considered the arguments contained in the Parties' Joint Motion for Summary Judgment, and deem these

CIVIL MINUTES - GENERAL

EXHIBIT 42 - PAGE 001341

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

matters appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

## I. Plumley's Evidentiary Objections to Defendants' Expert Disclosures

Rule 26 requires parties to disclose all expert evidentiary material that may be relied upon at trial, and further provides that these disclosures be made at the times directed by the court. FED. R. CIV. P. 26(a)(2)(C). Moreover, pursuant to Rule 26(e), a party is under a duty to supplement a Rule 26(a) expert report "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties . . . ." FED. R. CIV. P. 26(e). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001). This rule excludes untimely expert witness testimony, unless the "parties' failure to disclose the required information is substantially justified or harmless." *Id*. Furthermore, a party that fails to comply with a scheduling order is subject to the sanctions available to a court to enforce its orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii). FED. R. CIV. P. 16(f). Here, June 30, 2008 was the deadline for the Parties to serve reports containing their experts' complete opinions. The Parties were to serve rebuttal reports by July 14, 2008 and conclude discovery on August 28, 2008. (Dkt. No. 117).

### A. Haas's New Declaration Is Not a Proper Supplemental Disclosure Under Rule 26(e)

Plumley objects to Defendants' "Supplemental Expert Report of Thomas W. Haas, Ph.D" as untimely. He argues that the new declaration departs sufficiently from the opinions in Haas's original June 2008 report such that it violates both the Court's scheduling order regarding expert disclosures and Rule 26(a), and thus should be excluded from evidence as a sanction under Rule 37. The challenged declaration, dated February 4, 2009, was submitted well after the Court's deadlines for expert disclosures and discovery completion. (*See* Haas Decl., Ex. 1 ["June 2008 Report"]; *id*. at Ex. 2 ["February 2009 Report"]).

Defendants characterize Haas's new declaration as "supplemental," and thus not untimely. However, supplementary disclosures do not permit a party to introduce new opinions after the disclosure deadline under the guise of a "supplement." Although Rule 26(e) obliges a party to "supplement or correct" its disclosures upon information later acquired, this "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report (indeed, the lawsuit from the outset). To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports . . . ." *Beller ex. rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003). Enabling this pattern of behavior "would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines." *Id*. at 701-02. Accordingly, a supplemental expert report that states additional opinions or "seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report" is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c). *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008).

EXHIBIT 42 - PAGE 001342

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
| --- | --- | --- | --- |
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

As Plumley notes, Haas's opinions in his most recent declaration depart substantially from the ones he submitted within the Court's time frame for expert discovery. Haas's initial report stressed that Plumley's disclosures during the application process for the '047 patent were "highly misleading" due to Plumley's selective presentation of DMC's grommet catalog from 1989. (June 2008 Report ¶ 154). Specifically, Haas contended that "[p]age 8 of the 1989 catalog contains information inconsistent with the position Plumley took in support of patentability . . . . Plumley could not have taken those positions had he disclosed page 8." (*Id.*). Page 8 of the Mockett catalog features the rectangular RG grommet and the large oval LO grommet. (Plumley Decl., Ex. 15 at 245). The RG grommet is specifically described as having "snap-out" tabs on the grommet cover to allow for cord access. An assortment of RG and LO grommets are photographed from a top-down angle with complete grommet covers and with the snap-out "access ports removed." (*Id.*).

According to Haas, this particular page would have been critical to the examiner in evaluating Plumley's patent because "[n]o other single reference of record claims all of the claim elements that are included in the undisclosed page 8 of the 1989 Doug Mockett & Company Catalog and the RG and LO grommets." (June 2008 Report ¶ 157). Haas concluded that Plumley had violated his duty of candor to the PTO by omitting page 8 on the grounds that it was not cumulative to other prior art references already presented to the examiner, and that the depictions of the RG and LO grommets on this page would have supported "*prima facie* rejections of the '047 patent claims . . . based on anticipation by and/or obviousness over the RG and LO grommets by themselves or in combination with other known information." (*Id.* ¶ 155). Haas's opinion in this respect is integral to Defendants' claim that Plumley engaged in inequitable conduct before the PTO, thereby rendering the '047 patent unenforceable.

The February 2009 Report submitted by Haas offers a very different perspective on the importance of page 8 of the Mockett catalog, as well as Plumley's duty of candor. The change in tenor appears to be motivated by Plumley's statement during a deposition in September 2008 that he had, in fact, provided page 8 of the catalog to his attorney, and that it was his attorney who decided that the page was cumulative and did not need to be disclosed. If Plumley had indeed provided the allegedly crucial catalog page to his attorney, this disclosure would tend to negate any inference of an intent to deceive the PTO—a necessary element for Defendants' inequitable conduct defense. In his new declaration, Haas states that Plumley's attorney "produced a copy of a catalog page 8 showing only the top and sides of RG and LO. Even if Plumley provided that copy to his patent attorneys, it still did not convey the important facts that RG attached to the reverse surface of the cap or that LO attached at a thin web. In my opinion, Plumley misled his attorneys and the PTO about Mockett's prior art grommets." (February 2009 Report ¶ 10). Similarly, Haas now notes that a letter from Plumley to his attorney "says that it is enclosing 'copies of catalog pages showing examples of prior art.' However, the catalog page copies show RG and LO only from the top and do not reveal that RG attached at the reverse surface of the cap or that LO attached at a thin web." (*Id.* ¶ 11). Yet, the content of catalog page 8, including the photograph "showing only the top and sides of RG and LO," was no different than it was at the time of Haas's initial report. Clearly Haas is no longer of the opinion that, had the examiner been privy to the information revealed on page 8, this would have been sufficient to support a rejection of Plumley's patent as anticipated and obvious.

EXHIBIT 42 - PAGE 001343

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

Under similar circumstances as here, the Federal Circuit upheld a district court's exclusion of a supplemental expert report, filed after the expert discovery deadline entered pursuant to Rule 16(b), as a proper sanction where the report "contained new opinions and information and did not merely supplement the original report." *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 744-45 (Fed. Cir. 1997) (exclusion justified where party fails to provide adequate explanation for failure to timely provide expert disclosure in accordance with scheduling order). Haas, a purported expert in patent law, was capable of stating at the time of his initial report whether or not the catalog page sufficiently disclosed certain limitations present in Plumley's invention. Defendants point out that the Court's claim construction "was not available at the time of Dr. Haas'[s] original report," and that "Rule 26 permitted Dr. Haas to supplement his opinions based on such new information." (Joint Mot. 48). Defendants appear to argue that our claim construction retroactively informs the nature of Plumley's duty of candor to the PTO during the application process. Yet, neither Plumley nor the examiner had the benefit of our claim construction at the time of patent prosecution. Nor would our claim construction have any effect on whether the information disclosed in page 8 of the Mockett catalog was cumulative to other prior art references before the examiner. There was no information not already at Haas's disposal that would render his initial opinion substantively incorrect. Haas's "supplemental" report, rather than correcting an error or omission in his prior report, provides a new opinion that is designed to strengthen Defendants' legal argument for inequitable conduct, and as a result is not a proper supplement under Rule 26(e). *See Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 807 (N.D. Ill. 2005) ("If the late-filed opinions are new, they must be stricken. . . . Thus, the Court's first step is to determine whether the statements by [the expert] are new or contradictory opinions.").

**B.** *Defendants Have Not Shown the Rule 26(a) Disclosure Violation is Either Substantially Justified or Harmless*

The new opinions expressed in Haas's February 2009 Report were untimely disclosed in violation of Rule 26(a) and this Court's scheduling order. "Excluding expert evidence as a sanction for failure to disclose expert witnesses in a timely fashion is automatic and mandatory unless the party can show the violation is either justified or harmless." *Carson Harbor Village, Ltd. v. Unocal Corp.*, No. 96-cv-3281-MMM, 2003 WL 22038700, at *2 (C.D. Cal. Aug. 8, 2003). In view of the automatic nature of the exclusionary sanction, the Ninth Circuit "give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti by Molly*, 259 F.3d at 1106. For example, the Ninth Circuit has affirmed the exclusion of untimely expert testimony where the plaintiff unjustifiably missed the deadline for disclosing expert witnesses by twenty days and missed the deadline for submitting expert reports by six weeks. *Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (upholding exclusion of untimely expert testimony submitted by plaintiff in opposition to summary judgment). The party facing the sanction carries the burden of demonstrating that the failure to comply with rules concerning expert testimony is substantially justified or harmless. *Torres v. City of Los Angeles,* 548 F.3d 1197, 1213 (9th Cir. 2008); *see also Yeti by Molly*, 259 F.3d at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness.").

Defendants have not offered an explanation of any "substantial justification" or "harmlessness" of Haas's late-filed report. Certainly, the new opinion contained in the report is integral to Defendants'

**CIVIL MINUTES - GENERAL**

EXHIBIT 42 - PAGE 001344

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

argument that Plumley's patent is rendered unenforceable as a result of inequitable conduct during patent prosecution. Haas's adoption of a more robust view of Plumley's duty of candor is not harmless to Plumley. Moreover, failure to disclose testimony is not substantially justified where, as here, the need for such testimony could reasonably have been anticipated. *See Wong v. Regents of the Univ. of Calif.*, 410 F.3d 1052, 1061-62 (9th Cir. 2005).

Defendants have provided no basis to suggest that enforcement of Rule 37(c)'s exclusionary sanction is not warranted here. Accordingly, Haas's February 2009 Report is **EXCLUDED** from evidence and will not be considered by the Court in assessing Defendants' arguments on summary judgment.

### C. Van Horn May Not Testify as to Technical Matters Requiring Skill in the Art

Plumley also challenges Defendants' expert Charles Van Horn's qualifications to testify on Plumley's duty of candor, as well as his reliance upon the new opinions found in Haas's February 2009 Report. To the extent that Van Horn's declaration incorporates or relies upon the new opinions found in Haas's February 2009 Report, it will likewise be **EXCLUDED**. (*See* Van Horn Decl. ¶ 75 ("Since I am not a person skilled in the art of this invention, I have relied on the opinions of Defendants' technical expert, Dr. Thomas W. Haas, regarding the materiality of information when the information is required to be viewed from the perspective of a person skilled in the art.")). Although Van Horn, a former Deputy Assistant Commissioner for Patent Policy with the PTO, may properly testify as to PTO procedure for patent prosecution and reexamination, a witness not qualified in the pertinent art may not testify as to the underlying technical questions involved in determining materiality of information withheld from the PTO, such as the scope and content of prior art references. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008).

### D. Asbaghi's Rebuttal Report

Lastly, Plumley objects to Ahmad Asbaghi's expert report, offered by Defendants as a purported rebuttal expert to Plumley's financial expert, Alan Goedde. Plumley argues that the Asbaghi report is not responsive to the arguments contained in Goedde's report, and instead addresses matters relating to patent validity and inequitable conduct that should have been the subject of the first round of expert reports. (Joint Mot. 48). Rebuttal reports are limited to evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in an expert report. FED. R. CIV. P. 26(a)(2)(C)(ii). Those portions of an expert's rebuttal that opine on subjects that were not addressed in the expert report purportedly being rebutted should be excluded. *See First Years, Inc. v. Munchkin, Inc.*, 575 F. Supp. 2d 1002, 1008 (W.D. Wis. 2008) (excluding from evidence those portions of defendant's expert report that discussed issues of invalidity where the report was purportedly submitted to rebut expert testimony on issues related to infringement).

Defendants contend that Asbaghi's declaration is a proper rebuttal as it "responds to Dr. Goedde's opinion that Defendants would have switched to non-infringing alternatives if there were any." (Joint Mot. 49). Asbaghi prefaces his rebuttal by stating: "Dr. Goedde, in his report, opined that there were no acceptable non-infringing substitutes. I disagree." (Asbaghi Decl. ¶ 13). Based on his characterization of the point of disagreement with Goedde, we would expect Asbaghi to offer a contrary

EXHIBIT 42 - PAGE 001345

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|

| Title | *Roger Plumley v. Doug Mockett, et al.* |
|---|---|

opinion on this issue as it relates to damages, such as by arguing that there were, in fact, non-infringing alternatives, or that the availability of alternative designs has minimal bearing on a reasonable royalty calculation. The thrust of Asbaghi's report, however, is to bolster the conclusions of Haas regarding the invalidity of Plumley's patent as well as Plumley's alleged breach of his duty of candor to the PTO. For example, Asbaghi states, "I agree with the analysis and conclusion of Dr. Haas in regard to the Plumley patent being invalid for anticipation at least by the RG grommet and invalid for obviousness over other references in combination." (*Id.* ¶ 22). Asbaghi also states that Haas was correct "in regard to the patent in suit being procured in breach of Plumley's duties of candor and good faith through the use of misleading statements." (*Id.*). He continues on in more detail as to the ways in which Plumley's disclosures mischaracterized prior art to avoid anticipation.

While other portions of Asbaghi's declaration that respond to Goedde's calculation of reasonable royalties is appropriate to use as rebuttal of damages assessments, Asbaghi's discussions of inequitable conduct and invalidity are not reasonably prompted by Goedde's report nor responsive to it. Goedde does not opine on the subjects of validity or inequitable conduct, only damages if liability is established. Asbaghi's proper rebuttal is therefore only as to Goedde's damages opinion. If Defendants wished to use Asbaghi's testimony to establish inequitable conduct or invalidity, they should have disclosed his opinions on these issues in an initial expert report. *See Procter & Gamble Co. v. McNeil-PPC, Inc.*, 615 F. Supp. 2d 832, 838 (W.D. Wis. 2009) (finding select paragraphs from plaintiff's expert rebuttal report were not a proper rebuttal of defendant's expert reports on inequitable conduct and validity; the court excluded "these paragraphs because they are improper supplementation and fail to comply" with Rule 26(a)). The non-responsive opinions expressed in Asbaghi's declaration are not proper in a rebuttal report, and are therefore **EXCLUDED** from evidence as a sanction for failure of timely disclosure under Rule 37(c).

## II.   Motions for Summary Judgment

"Summary judgment is as appropriate in a patent case as it is in any other case," and should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990). A material fact is one that may affect the outcome of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1369 (Fed. Cir. 2006) (party with the burden of proof on an issue must "provide[ ] evidence sufficient, if unopposed, to prevail as a matter of law"). However, a party moving for summary judgment need not "'produce evidence' showing the absence of a genuine issue of material fact" on issues for which it does not bear the burden of proof, but need only give notice to the party with the burden of proof that it must come forward with all of its evidence. *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1307-08 (Fed. Cir. 2006) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325-26 (1986)).

### A.   Literal Infringement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

In a patent infringement action, a motion for summary judgment "requires a two-step analytical approach. First, the claims of the patent must be construed to determine their scope. . . . Second, a determination must be made as to whether the properly construed claims read on the accused device." *Pitney Bowes, Inc., v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999). The patentee bears the burden of proving infringement by a preponderance of the evidence. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). As we have already performed the first step of the infringement analysis, namely the construction of disputed claim terms, we must now compare the '047 patent to Defendants' accused device to determine whether the Mockett flip-top grommet infringes the asserted claims of the '047 patent.

Literal infringement of a claim exists if "every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996). Essentially, the issue of literal infringement collapses into a question of claim construction amenable to summary judgment. *See MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007) ("Because there is no dispute regarding the operation of the accused systems, that issue reduces to a question of claim interpretation and is amenable to summary judgment."). Summary judgment on the issue of literal infringement in favor of Plumley is thus proper only if "no reasonable jury could find that every limitation recited in a properly construed claim" was not embodied in the accused device. *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005).

Here, Plumley has moved for summary judgment as to three independent claims, Claims 1, 18, and 21, and two dependent claims, Claims 6 and 25.

## 1.    Independent Claims 1, 18, and 21

Claims 1, 18, and 21 share the one limitation that Defendants explicitly dispute as to these asserted claims, namely, whether the closure member for the accused Mockett flip-top grommet is "captive to the body" as defined in our claim construction order as "held to the body within a range of motion."[1] (*See* Joint Mot. 3 ("Defendants' closure member is not 'captive to the body' as required by all of the claims.")). This limitation provides for a closure tab which is attached to the underside of the grommet cover which, in the closed position, is flush with the cover. The tab may be swung downward

---

[1] The common limitation relates to the "closure member" of a grommet cover, construed as "a piece capable of closing an opening": "the closure member for the body opening being **[held to the body within a range of motion]** and movable relative to the body between a) a closed position in which the closure member closes the opening and has **[an edge that substantially completes the expected outline of the body absent the opening]**, and b) an open position in which the closure member **[hangs]** from the body reverse surface in the space without projection above the body obverse surface and in which the opening as defined by said side and end edges thereof is fully open through the body." (*See* '047 patent, col. 13, ll. 22-31 [Claim 1]; *id*. at col. 16, ll. 19-29 [Claim 18]; *id*. at col. 16., l. 65 – col. 17, l. 8 [Claim 21]). The language in bold represents our construction of disputed claim terms pursuant to our December 23, 2008 claim construction order. (Dkt. No. 151).

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | | Date | May 26, 2010 |
|---|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | | |

from the point of attachment on the underside of the cover to hang in an open position, leaving an opening in the grommet cover for wires to pass through.

Defendants' arguments substantially focus on Mockett's grommet design in U.S. Patent No. 7,383,610 (the "'610 patent"), rather than the accused device. (*See id.* at 5-6 ("[T]he '610 patent specification explains the non-captive nature of Mockett's closure member . . . . It is the exact opposite of Plumley's claimed design, and patentably different.")). Defendants' assertion that the closure member for the '610 patent is "non-captive" is not germane to a discussion of whether the Mockett flip-top grommet has a "captive" closure member. The accused Mockett flip-top grommet has a closure tab which, in the closed position, is flush with the grommet cover and closes the opening. The closure tab is attached to the underside of the cover by a pin-and-groove hinge—the pin forms the end of the closure tab and functions as an axle that fits into two grooves on the underside of the cover. This hinge allows the closure tab to pivot down from the closed position to create an opening for cables to pass through. The limitation of Claims 1, 18, and 21 at issue reads exactly on this pivoting closure tab attached to the underside of the grommet cover within a range of motion.

Defendants contend that when moved to the closed position, the closure tab of the Mockett flip-top grommet "will generally 'break' off the body." (Joint Mot. 4). Whether the closure tab can, with enough force, be disengaged from the cover by snapping the pins of the closure tab out of the corresponding grooves on the underside of the cover does not change the fact that, when not "broken," the tab is attached to the underside of the cover within a range of motion. Thus, the assertion that "Defendants' grommet tends to 'break'" (*id.* at 3), is unavailing. In any event, the closure tab is just as easily snapped back into place, "held to the body within a range of motion," and capable of being pivoted down and out of the way in an open position and completing the cover in the closed position. The function of the closure tab mirrors the name of the grommet: "flip-top." As there is no genuine issue of material fact as to whether the limitations of independent Claims 1, 18, and 21 read on the Mockett flip-top grommet, Plumley is entitled to judgment as a matter of law on this issue. We therefore **GRANT** Plumley's motion to the extent he seeks partial summary judgment of literal infringement as to Claims 1, 18, and 21 of the '047 patent.

### 2. Dependent Claim 6

Plumley asserts that the additional limitation provided by Claim 6: "A cover for a wiring aperture as recited in claim 1 comprising means integral to the body affording captive cooperation of the closure member within the body and accommodating pivoting of the closure member to and from its open position," reads on the Mockett flip-top grommet. ('047 patent, col. 13, ll. 54-58). Defendants have not made any arguments directly challenging Plumley's allegation of infringement of this limitation. Claim 6 describes, specifically, using the closure tab as part of a hinge on the underside of the grommet cover to enable the described pivoting movement. In fact, the type of pin-and-groove hinge utilized by the Mockett flip-top grommet is illustrated by Figure 14 of the '047 patent, where one end of the closure tab functions as an "axle" and the "ends of the axle cooperate rotatably in openings formed in hinge lugs" on the underside of the cover. (*Id.* at col. 9, ll. 64-68). Thus, the manner in which the Mockett flip-top grommet infringes Claim 1 embodies the additional limitation of dependent Claim 6. As there is no genuine issue of material fact as to whether the limitations of Claim 6 read on the

EXHIBIT 42 - PAGE 001348

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

Mockett flip-top grommet, Plumley is entitled to judgment as a matter of law on this issue. We **GRANT** Plumley's motion to the extent he seeks partial summary judgment of literal infringement as to Claim 6.

### 3. Dependent Claim 25

As with Claim 6, Defendants have not provided any explicit opposition to Plumley's assertion that the limitation provided by dependent Claim 25: "A wire management grommet as recited in 21 wherein the liner comprises a sleeve having at least a portion of its perimeter circularly cylindrical in shape," reads on the Mockett flip-top grommet. ('047 patent, col. 18, ll. 4-6). The "liner" described in Claim 21 is a "hollow cylindrical sleeve" (*id.* at col. 16, l. 43), that is placed into a circular hole bored into the piece of furniture that is being fitted with the grommet. (*See id.* at col. 1, ll. 40-43 ("The liner is inserted into a slightly larger sized hole bored in the surface of a furniture object until the collar of the liner comes to rest[ ] against the furniture's surface.")). "The wiring or cord is then placed into the [grommet cover's] slot-like opening and the [grommet cover] is mounted within the liner," such that the underside of the grommet cover rests on the surface of the piece of furniture. (*Id.* at col. 1, ll. 49-54). The Mockett flip-top grommet is also comprised of two components: the grommet cover and a separate liner. The liner is cylindrical in shape, creating a circular opening for cords to pass through, and corresponds to the inner lip of the grommet cover that fits inside the liner to hold the cover in place. There is no genuine issue of material fact that the limitations of Claim 25 read on the accused device, and Plumley is entitled to judgment as a matter of law on this issue. Therefore we **GRANT** Plumley's motion to the extent he seeks partial summary judgment of literal infringement as to Claim 25.

### B. Patent Validity

The Parties have filed cross-motions for partial summary judgment on the issue of patent validity. The Parties' arguments relate to Defendants' assertion that the '047 patent is anticipated by the Herrera reference and is rendered obvious by the physical Mockett RG grommet in combination with other prior art. Plumley's patent "comes with a statutory presumption of validity under 35 U.S.C. § 282. Because of this presumption, an alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence, as well as the initial burden of going forward with evidence to support its invalidity allegation." *Titan Tire Corp. v. Case New Holland, Inc.,* 566 F.3d 1372, 1376 (Fed. Cir. 2009). Defendants thus bear the burden of persuasion at trial by showing by clear and convincing evidence that each asserted claim is invalid as either anticipated or obvious.

As the moving party that bears the burden of proof at trial on the issue of patent invalidity, Defendants "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial" under a clear and convincing evidence standard. *Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975, 987 (9th Cir. 2006). That is, Defendants must affirmatively demonstrate the absence of a material dispute such that no reasonable trier of fact could find for Plumley. *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007). However, "[s]imply because the facts are undisputed does not make summary judgment appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is

**CIVIL MINUTES - GENERAL**

EXHIBIT 42 - PAGE 001349

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|

| Title | *Roger Plumley v. Doug Mockett, et al.* |
|---|---|

improper." *Miller*, 454 F.3d at 988. If Defendants satisfy this initial burden, Plumley must produce evidence such that a jury, drawing all inferences in favor of Plumley, could find that the claim at issue is neither obvious nor anticipated. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If Plumley adduces such evidence, Defendants are not entitled to summary judgment of patent invalidity. Moreover, "[w]hen the examiner considered the asserted prior art and basis for the validity challenge during patent prosecution," the burden on the party asserting invalidity "becomes particularly heavy." *Impax Labs., Inc. v. Aventis Pharms. Inc*., 545 F.3d 1312, 1314 (Fed. Cir. 2008).

On his cross-motion, Plumley does not bear the burden of proving validity at trial. As the party moving for summary judgment of patent validity, he may discharge his initial burden by "either produc[ing] evidence negating an essential element" of Defendants' defense, or by showing that Defendants do "not have enough evidence of an essential element to carry [their] ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102. If Plumley discharges his burden by either method, the burden then shifts to Defendants to produce sufficient evidence to create a genuine issue of material fact regarding their claim of invalidity on a clear and convincing evidence standard. *Id*. at 1103. Here, Plumley has made this initial showing due to the statutory presumption of validity. 35 U.S.C. § 282**.**

## 1. Anticipation of the '047 Patent

"A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros., Inc. v. Union Oil Co. of Cal*., 814 F.2d 628, 631 (Fed. Cir. 1987). Anticipation is a factual determination. *Koito Mfg. Co., Ltd. v. Turn-Key-Tech., LLC*, 381 F.3d 1142, 1149 (Fed. Cir. 2004). "In practice, the anticipation inquiry is identical to the infringement inquiry, albeit with a clear and convincing standard of evidence." *Rambus Inc. v. Hynix Semiconductor Inc.*, 628 F. Supp. 2d 1114, 1122 (N.D. Cal. 2008).

Defendants direct us to the opinion of their expert, Haas, who states that the Herrera reference, U.S. Patent No. 4,688,491 (the "'491 patent" or "Herrera"), disclosed every element of the asserted claims. (Joint Mot. 18). Alternatively, they argue, Plumley's assertion that the Herrera closure member does not "depend" from the underside of the grommet cover because it is generally horizontal creates a dispute as to a material fact. "Though it is a question of fact, anticipation, like infringement, is amenable to summary judgment where there is no issue of material fact regarding the reference's disclosure." *Rambus*, 628 F. Supp. 2d at 1122. Here, there is no issue of material fact regarding the Herrera reference's disclosure; there is only a dispute concerning the application of our claim construction for the '047 patent to Herrera. Such a dispute turns on a question of law for this Court to resolve.

Herrera describes a grommet where the closure tab slides, horizontally, between a "retracted" position, which provides the opening for the wires to pass through, and an "extended" position, which closes the cover.[2] The claim language explicitly describes the movement of this closure tab as

---

[2] *See* '491 patent, col. 10, ll. 59-66 (Claim 1: "said cover having an adjustable panel shiftably mounted on the [cover] for movement longitudinally of said slot, for movement between a retracted

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

"longitudinal." ('491 patent, col. 10, l. 61). In contrast, the closure tab for Plumley's '047 patent utilizes a hinge to allow the tab to pivot down and away from the cover—not slide along the underside of the cover. Thus, in its analogous "retracted" position, the closure tab in the '047 patent is not parallel to the cover but rather is angled away from the underside of the cover. This limitation is not anticipated, either expressly or inherently, by Herrera. The examiner who conducted the reexamination proceeding addressed to Herrera also found that Herrera's closure tab "does not 'depend from' (i.e. hang down from) the body surface in the open position." (Plumley Decl., Ex. 11, at 212 (Aug. 15, 2007 *Ex Parte* Reexamination)). We find that no reasonable trier of fact could find on a clear and convincing standard that Herrera discloses a closure tab that "depends" from the underside of the grommet cover, and therefore **GRANT** partial summary judgment in Plumley's favor that the Herrera patent does not anticipate any of the asserted claims of the '047 patent.

## 2.    Obviousness of the '047 Patent

A claim is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill" in the pertinent art. 35 U.S.C. § 103(a). Obviousness is a legal conclusion based on underlying factual determinations, including the scope and content of the prior art, the differences between the prior art and the claims at issue, the level of ordinary skill in the art, and any relevant secondary considerations of nonobviousness, such as commercial success, long-felt need, and the failure of others. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)). Obviousness must be proven by clear and convincing evidence. *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007). Summary judgment is appropriate if "the obviousness of the claim is apparent in light of these factors." *KSR*, 550 U.S. at 427.

In rejecting rigid application of the "teaching, suggestion, or motivation" test for obviousness, the Supreme Court observed in *KSR* that common sense can be a source of reasons to combine or modify prior art references to achieve the patented invention. *Id.* at 421 ("Rigid preventative rules that deny factfinders recourse to common sense, however, are neither necessary under our case law nor consistent with it."). While the Court warned against "the distortion caused by hindsight bias and . . . *ex post* reasoning," it also noted that "[c]ommon sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420-21. Thus, courts "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ" to reach a conclusion of obviousness. *Id.* at 418. In the wake of *KSR* the Federal Circuit has held that, "while an analysis of obviousness always depends on evidence that supports the required *Graham* factual findings, it also may include recourse to logic, judgment, and common sense available to the

position in which said cover slot is fully opened to said sleeve bore, and an extended position in which said cover slot is fully closed by said panel, when said cover is in said snap fit reception in said sleeve edging recess"); *id.* at col. 12, ll. 45-52 (Claim 5: same).

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | | Date | May 26, 2010 |
|---|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | | |

person of ordinary skill that do not necessarily require explication in any reference or expert opinion." *Perfect Web Techs., Inc. v. InfoUSA, Inc.,* 587 F.3d 1324, 1329 (Fed. Cir. 2009).

Defendants argue that the physical specimen of Mockett's RG grommet, when combined with any number of prior art references, renders the '047 patent obvious. They contend that all the limitations of the asserted claims can be found in the RG grommet, "other than adding a hinge to the back of the tear-away panel [of the RG grommet] so it can function as a closure member movable to a fully open position in which the closure member" pivots down from the underside of the cover. (Joint Mot. 10). This additional limitation is not an insignificant modification; it is the feature which the specification of the '047 patent singled out as the main improvement over grommets with removable closure members:

> [Such other devices] provide a separate cover or closure that can be placed in the cap opening when the opening is not being used for the passage of wires or cables. However, their utility is limited. Because the cap opening cover is not captive to the cap, it can be easily lost or misplaced. Other devices have tried to remedy this security problem by providing a storage receptacle in the underside of the cap for the separate closure member. . . . Because the cap opening cover is separate, it can be easily dislodged from its storage position and lost. For best security, the cover should be a captive part of the cap.

('047 patent, col. 2, ll. 38-50). The specification also details the differences between Plumley's invention and the Mockett grommet on which Defendants base their obviousness argument: "The devices in Mockett [and other patents] have a disadvantage. They do not provide cover for the cap opening when the grommet is not in use, i.e., when no wires or cords are passed through the hole in the work surface in which the device is installed. Thus, when not being used to route wiring through the surface of a furniture article, the furniture surface is left with an open hole. This is aesthetically undesirable. It is also functionally objectionable." ('047 patent, col. 2, ll. 17-26). Evidence that an invention satisfied a long-felt and unmet need that existed on the patent's filing date is a secondary consideration of nonobviousness. *See Procter & Gamble Co. v. Teva Pharms. USA*, 566 F.3d 989, 998 (Fed. Cir. 2009). However, "evidence of secondary considerations does not always overcome a strong prima facie showing of obviousness." *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008).

Defendants point to numerous prior art references for possible combinations with the RG grommet, including the Zeliff patent, U.S. Patent No. 4,721,476 (the "'476 patent" or "Zeliff"). Zeliff describes the use of hinged panels covering access to an electrical box. The hinge lies along the edge of the opening, and allows the panel to be pivoted inward so that cables and wires can pass through from the interior of the electrical box. (*See* '476 patent, col. 6, l. 66–col. 7, l. 54). As Plumley notes, merely adding a hinge as described by Zeliff to a removable tab from the Mockett RG grommet would not meet all the limitations of the '047 patent. Namely, the hinge would be situated along the edge of the opening of the cover, not on the underside of the cover as described in the '047 patent, and thus the hinge would protrude slightly into the opening defined by the shape of the closure tab even when the closure tab was pivoted into the fully open position. (*See* '047 patent, col. 13, ll. 27-31 (when the closure tab is in the open position, it creates an unobstructed opening for the passage of wires)). Defendants argue that "it

EXHIBIT 42 - PAGE 001352

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|

| Title | *Roger Plumley v. Doug Mockett, et al.* |
|---|---|

would have been obvious to employ a hidden or offset hinge," and cite to an illustration in Zeliff, as well as other references. (Joint Mot. 13).

Plumley responds to Defendants' obviousness argument regarding an offset hinge on the underside of the cover by emphasizing that "Defendants have not identified (and there are) no combination of prior art which together contain all these elements of the '047 patent." (Joint Mot. 19). Even though an offset hinge is not specifically suggested by Zeliff, this is not determinative of whether it would have been obvious for a person of ordinary skill in the art to offset the hinge when combining hinged panels in Zeliff with the removable panels in the Mockett RG grommet. "Determining obviousness requires considering whether two or more pieces of prior art could be combined, or a single piece of prior art could be modified, to produce the claimed invention." *Comaper Corp. v. Antec, Inc.,* 596 F.3d 1343, 1351-52 (Fed. Cir. 2010). Under *KSR*'s flexible approach, however, it is not necessary for all the claim limitations of the patent in issue to be expressly identified in the prior art for a court to invalidate a patent claim on the basis of obviousness. *See KSR,* 550 U.S. at 417 ("If a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."). Although the Parties have not briefed the ordinary level of skill in the art in question, we are skeptical of any suggestion that placing a hinge someplace other than the edge of an opening is beyond such skill.

Based on the references cited by Defendants, a reasonable jury could, but need not necessarily, find that common sense and the "creative steps" taken by a person of ordinary skill in the art would render the invention described in the '047 patent obvious by clear and convincing evidence. In light of the countervailing considerations of nonobviousness in this case as well as the inherently amorphous nature of an inquiry into the common-sense creativity of a person of ordinary skill in the art, and drawing all inferences in favor of Plumley, a reasonable jury could likewise find the claimed invention nonobvious. Thus, Defendants have failed to show that *no* reasonable jury could find against them on their obviousness defense, and are not entitled to partial summary judgment on this issue. Plumley is likewise not entitled to partial summary judgment on his cross-motion for nonobviousness since there remains a triable issue on Defendants' obviousness claim even on a clear and convincing evidence standard. Accordingly, we **DENY** both Plumley's and Defendants' cross-motions for partial summary judgment of nonobviousness and obviousness, respectively.

### C. *Willfulness*

Defendants seek partial summary judgment with respect to Plumley's allegation that they willfully infringed the asserted claims of the '047 patent. To prevail on an allegation of willfulness, a patentee must first "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*).[3] As the moving party on an issue for

---

[3] "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | | Date | May 26, 2010 |
|---|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | | |

which they do not bear the burden of proof at trial, Defendants may discharge their initial burden on summary judgment by "either produc[ing] evidence negating an essential element" of Plumley's claim, or by showing that Plumley "does not have enough evidence of an essential element to carry [his] ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102. If Defendants discharge their burden by either method, the burden then shifts to Plumley to produce evidence to support his claim of willfulness. *Id*. at 1103. Should Plumley fail to produce sufficient evidence to create a genuine issue of material fact on a clear and convincing evidence standard, then Defendants are entitled to partial summary judgment on this issue. *Id*.

Defendants contend that their affirmative defenses of invalidity are reasonable, and therefore negate an objectively high likelihood of liability. (Joint Mot. 26-27.) They cite the opinion of the California appellate court reversing the denial of Mockett's anti-SLAPP special motion to strike Plumley's claim for malicious prosecution based on Mockett's filing an interference. (Carmichael Decl., Ex. 30, at 3074-3104 [July 14, 2008 California Court of Appeal ruling, Case No. B196598]). One of the elements of malicious prosecution is that the underlying action was brought without probable cause; the California Court of Appeal found that Mockett's initial success in arguing derivation before the PTO, though reversed on appeal, conclusively established probable cause to initiate the interference. (*Id*. at 3094-3100).

In response to Defendants' assertion of reasonable defenses as negating any "objectively-defined risk," Plumley invokes the decision of a California state court that Plumley had been the first to conceive of the pivot-tab grommet: "When a person who is told by a judge that they stole a design and falsely claimed it as their own continues to develop and expand their use of that very design, they act with objective recklessness." (Joint Mot. 29). We note that Plumley does not reference the PTO's subsequent decision in the interference action initiated by Mockett, ruling that Plumley derived his invention from Mockett. Indeed, Plumley filed an action under 35 U.S.C. § 146 in this Court, seeking to set aside the PTO's finding of derivation. *See Plumley v. Mockett*, Case No. CV 98-6117-GHK (Ex) (C.D. Cal. filed Jul. 29, 1998). Plumley argued in the alternative that the PTO erred in not adopting the state court's findings of facts, and that we, too, should adopt those findings. As Plumley will recall, we declined to do so. In any event, "evidence of copying in a case of direct infringement is relevant only to *Seagate*'s second prong, as it may show what the accused infringer knew or should have known about the likelihood of its infringement." *DePuy Spine, Inc. v. Medtronic Sofamar Danek, Inc.*, 567 F.3d 1314, 1336 (Fed. Cir. 2009).

Plumley also asserts that when "a reasonable person is informed by the Patent Office that their application is rejected as being anticipated by an already issued patent," as was Mockett, based on the '047 patent, and yet "continue to go forward with the . . . sale of that product, in spite of the Patent office rejection, they are acting with objective recklessness." (Joint Mot. 29). Plumley's arguments fixate on indicia that Defendants "took actions constituting infringement," without directly addressing whether there was an objectively high likelihood that what they were infringing was a *valid* patent. *See Finisar*

known or so obvious that it should have been known to the accused infringer." *Seagate,* 497 F.3d at 1371.

Case 2:03-cv-02543-MRP-GHK Document 260-35 Filed 07/26/10 Page 6 of 23 Page ID
#:5646
Case 2:04-cv-02868-GHK-E Document 285 Filed 05/26/10 Page 15 of 24 Page ID

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

*Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1339 (Fed. Cir. 2008) ("[T]he '505 patent would only have been a problem for DirecTV if DirecTV infringed it *and* it was valid.") (emphasis in original). Under the objective recklessness standard enunciated in *Seagate,* "both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent." *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed. App'x 284, 291 (Fed. Cir. 2008).[4]

Here, Defendants hired counsel to challenge the validity of Plumley's patent in an interference and four reexamination requests. In the interference the PTO initially awarded priority of invention to Mockett, and each of the four reexamination requests were found by the PTO to raise a substantial new question of patentability regarding the '047 patent, even viewed in a light favorable to Plumley. *See* 35 U.S.C. § 304 (requiring PTO director to issue a reexamination order upon finding "a substantial new question of patentability"). While a substantial question of patentability raised by a reexamination request is not dispositive in a willfulness inquiry, it is certainly relevant. *See Lucent Techs., Inc. v. Gateway, Inc.*, No. 07-cv-2000-H, 2007 WL 6955272, at *7 (S.D. Cal. Oct. 30, 2007) ("The Court does not assume that a reexamination order will always prevent a plaintiff from meeting their burden on summary judgment regarding willful infringement, but it does consider this as one factor among the totality of the circumstances.").

Of particular note is the fact that, on their second request for reexamination, Defendants were successful in persuading the PTO to reject various claims as unpatentable in view of prior art. (*See* Carmichael Decl., Ex. 9, at 810-24 (Nov. 22, 2004 PTO action in *ex parte* reexamination)). Under similar circumstances, at least one other district court has held that a patentee's willful infringement claim fails as a matter of law where the PTO requires amendments to the patent before issuing a reexamination certificate. In *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561 (E.D. Tex. 2007), the defendant moved for judgment as a matter of law after a jury found, among other things, that the defendant had willfully infringed claims of two patents-in-suit. *Id.* at 578. The court reasoned that although the defendant "ultimately did not prove its invalidity defense by clear and convincing evidence, its position was hardly objectively unreasonable," noting that one of the patents at issue was not only reexamined but that "the USPTO did require changes to the . . . patent." *Id.* at 579. Given these undisputed facts, the court found that "[r]easonable persons, properly instructed and exercising impartial judgement, could not find by clear and convincing evidence that [the defendant] acted in the face of an unjustifiably high risk" of infringing a valid patent. *Id.*

Moreover, as the non-moving party with the burden of proof at trial, Plumley must proffer evidence sufficient to create a triable issue of fact on a clear and convincing standard that there was an objectively high likelihood that, notwithstanding potentially common-sense modifications to prior art, the '047 patent is nonobvious. As discussed above, Plumley has shown that a reasonable jury could find the '047 patent nonobviousness on a clear and convincing standard. This showing is sufficient for us to

---

[4] By the same token, "the fact that an issue [is] submitted to a jury does not automatically immunize an accused infringer from a finding of willful infringement." *Depuy Spine, Inc. v. Medtronics Sofamor Danek, Inc.*, 567 F.3d 1314, 1337 (Fed. Cir. 2009).

**CIVIL MINUTES - GENERAL**

EXHIBIT 42 - PAGE 001355

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|----------|---------------------|------|--------------|

| Title | *Roger Plumley v. Doug Mockett, et al.* |
|-------|------------------------------------------|

deny Defendants partial summary judgment on their claim of obviousness. However, our determination
that there is a triable issue regarding nonobviousness is not tantamount to finding a triable issue
regarding an *objectively high likelihood* of nonobviousness. *See Henrob Ltd. v. Bollhoff Systemtechnick
GmbH & Co.,* No. 05-cv-73214-DT, 2009 WL 3199812, at *10 (E.D. Mich. Sept. 29, 2009) ("Even if
[the patentee] proves infringement and Defendants fail to show the [patent-in-suit] is invalid, the
cogency of Defendants' arguments precludes [the patentee] from showing by clear and convincing
evidence an objectively high likelihood of infringement of a valid patent."). In sum, Plumley has
proffered insufficient evidence on which a reasonable jury could find, by clear and convincing evidence,
that Defendants acted despite an objectively high likelihood that the '047 patent was nonobvious and
otherwise valid. We therefore **GRANT** Defendants' motion for partial summary judgment of no willful
infringement.

> **D.** *Laches*

Plumley seeks summary judgment on Defendants' claim that Plumley unreasonably delayed in
bringing suit against them, warranting the application of laches. "Laches is cognizable under 35 U.S.C.
§ 282 as an equitable defense to a claim for patent infringement," and, when successfully invoked,
serves to bar a patentee's claim for damages prior to filing suit. *A.C. Aukerman Co. v. R.L. Chaides
Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (*en banc*). To prevail on the defense of laches, a
defendant must prove two underlying elements by a preponderance of the evidence: (1) "the plaintiff
delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew
or reasonably should have known of its claim against the defendant;" and (2) "the delay operated to the
prejudice or injury of the defendant." *Id.* at 1032 (citation omitted). However, even if the elements of
laches are established, the defense is an equitable one and is addressed to the discretion of the court to
be exercised after "look[ing] to all the facts and circumstances of the case and weigh[ing] the equities of
the parties." *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995).

As the moving party without the burden of persuasion at trial, Plumley may satisfy his initial
burden on summary judgment by producing evidence negating an essential element of Defendants'
defense, such as by offering a reason that would justify his allegedly unreasonable delay. If Plumley
meets this burden, Defendants must identify specific facts from which the Court, drawing reasonable
inferences in favor of Defendants, could find that the application of laches is warranted.

> **1.     Plumley Has Rebutted the Presumption of Laches**

Laches is presumed "where a patentee delays bringing suit for more than six years after the date
the patentee knew or should have known of the alleged infringer's activity." *Aukerman,* 960 F.2d at
1028. The presumption does not shift the ultimate burden of persuasion to the patentee to negate the
*prima facie* defense of laches; the "patentee bears the burden only of coming forward with sufficient
evidence to raise a genuine factual issue respecting the reasonableness of its conduct once the defendant
shows delay in excess of six years." *Id.* at 1039. The length of time which may be deemed

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

unreasonable "depends on the circumstances." *Id.* at 1032. Among the reasons which may justify a delay are other litigation, negotiations with the accused infringer, and dispute over ownership of the patent. *Id.* at 1033. If the patentee presents a "minimum quantum of evidence" rebutting either factual element of a laches defense, the presumption evaporates, and "the accused infringer would then have to satisfy its burden of persuasion with actual evidence." *Id.* at 1037-38.

Here, it is undisputed that the delay between Plumley's learning of potential infringement by Mockett and DMC and his filing this lawsuit is greater than six years. Accordingly, upon initial analysis the presumption of laches applies. However, the presumption is of the "bursting bubble" variety, and thus "completely vanishes" upon production of evidence that raises a genuine dispute as to the presumed fact. *Id.* at 1037. The continuous litigation between the Parties over the decade preceding Plumley's filing suit for infringement raises at least a triable issue as to whether the delay was unreasonable.[5] Thus, Plumley has presented the minimum quantum of evidence sufficient to dispel the presumption; Defendants are left with the burden of persuasion. *Id.* at 1038 ("Such evidence need only be sufficient to raise a genuine issue respecting the reasonableness of the delay to overcome the presumption.").

### 2.    Defendants Have Not Produced Evidence Creating a Triable Issue of Fact

Plumley's rebuttal of the presumption does not thereby entitle him to summary judgment on Defendants' laches defense. Defendants may still defeat Plumley's motion by pointing the Court to specific facts sufficient to establish, by a preponderance of the evidence, triable issues on the elements of the defense. *See id.* at 1045. Defendants argue that there is a genuine issue as to whether the entirety of Plumley's delay was reasonable, notwithstanding the explanations offered by Plumley, and at which point in time the delay may have become unreasonable. Specifically, they assert that the litigation between the Parties does not excuse Plumley's delay in bringing suit given the option of alleging an infringement claim in 1998 when Plumley sought review of the PTO's interference decision under 35 U.S.C. § 146. (Joint Mot. 24 ("An infringement claim can always be added to a § 146 action by a patentee (such as Plumley in 1998) seeking to overturn the Board's adverse decision.")). Plumley counters that "he cannot be criticized" for not suing for infringement when he was in the process of correcting the PTO's finding of derivation in favor of Mockett. (*Id.* at 25). Indeed, at the point that Plumley filed his Section 146 claim in this Court, the PTO had designated Mockett as the rightful owner of the invention claimed in the '047 patent. (*See* Carmichael Decl., Ex. 9, at 657-73 (initial judgment in Interference No. 103,260)).

In a similar situation, the Federal Circuit held that laches should not apply to the period that a patentee was involved in a reissue proceeding relating to the enforceability of his patent. *Vaupel*

---

[5] As for Inland, there is nothing in the record that indicates when Plumley discovered Inland's potentially infringing activities. Drawing all inferences in favor of Inland, as the non-moving party, we may infer that Inland's role as a manufacturer for DMC was apparent more than six years before Plumley filed the Complaint. However, Plumley's involvement in litigation with the other Defendants in this case suffices to eliminate the presumption of laches with respect to Inland. *See Aukerman*, 960 F.2d at 1039.

**CIVIL MINUTES - GENERAL**

EXHIBIT 42 - PAGE 001357

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

*Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 878 (Fed. Cir. 1991). "Without a valid and enforceable patent, [the patentee] could not reasonably be held to an obligation to sue in order to avoid a laches holding." *Id.* We additionally note that had Plumley asserted an infringement claim in tandem with his Section 146 claim, our remand to the PTO left the issue of patent ownership unresolved, and would have necessitated a stay of the infringement claim. *See Plumley v. Mockett,* Case No. CV 98-6117-GHK (Ex) (C.D. Cal. June 4, 1999) (order remanding to PTO for a decision on priority of invention). This presents a situation where "[p]atentees should be encouraged to avoid litigation when their patents are being reevaluated in the PTO rather than being forced into premature litigation on penalty of being held to have been guilty of laches." *Vaupel Textilmaschinen,* 944 F.2d at 878. Plumley's declining to claim infringement by Mockett, of a patent that had been awarded to Mockett, while concurrently challenging the PTO's decision does not create a genuine issue of fact as to the reasonableness of delaying until ownership issues were resolved.

On remand, the PTO held that, although Mockett was the first to conceive of the pivot-tab grommet described in the '047 patent, the priority of invention should be awarded to Plumley because Mockett was not diligent in reducing his invention to practice. (*See* Carmichael Decl., Ex. 9, at 686-704 (judgment on remand in Interference No. 103,260)). However, this decision was not issued until September 4, 2001. (*Id.*). On October 18, 2001, Mockett requested the PTO to reconsider its decision on priority of invention; this request was denied on August 26, 2002. (*See id.* at 709). Soon after, in October 2002, Mockett filed his own Section 146 action in this Court seeking to set aside the PTO's latest decision in interference awarding priority to Plumley. *See Mockett v. Plumley,* Case No. CV 02-8271-GHK (Ex) (C.D. Cal. filed Oct. 28, 2002). During the course of Mockett's Section 146 action, he filed a request for reexamination of the '047 patent with the PTO, which was granted. We accordingly stayed the Section 146 action pending the disposition of the ongoing reexamination proceeding. *See id.,* Dkt. No. 20 (May 19, 2003 order staying action). The PTO issued a certificate confirming Plumley's patent with respect to Mockett's first request for reexamination on March 16, 2004. *See id.,* Dkt. No. 23 (June 7, 2004 joint status report). Plumley filed the instant suit for patent infringement on April 23, 2004.

Viewing this undisputed evidence in a light most favorable to Defendants, the mere ability to claim infringement of the '047 patent at an earlier date does not create a genuine issue of triable fact as to whether Plumley's delay was nonetheless excused by the Parties' continual involvement in validity and ownership challenges. On this record, Plumley's delay was both reasonable and excused. Further, Defendants have not offered evidence that they have been materially prejudiced or injured by the delay, whether economic or evidentiary. *See Aukerman,* 960 F.2d at 1033. We therefore **GRANT** Plumley's motion for partial summary judgment on Defendants' laches defense.

### E.    Equitable Estoppel

"Equitable estoppel may be imposed in a patent case when a patentee induces another party to believe that it will not sue that party for infringement." *Forest Labs., Inc. v. Abbott Labs.,* 339 F.3d 1324, 1329 (Fed. Cir. 2003). Whereas the defense of laches bars relief on a patentee's claim only with respect to pre-suit damages, the whole suit may be barred if an accused infringer can establish the three elements of equitable estoppel. *See Aukerman,* 960 F.2d at 1041. First, the patentee's misleading

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|

| Title | *Roger Plumley v. Doug Mockett, et al.* |
|---|---|

conduct (whether by action or inaction) "must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer." *Id.* at 1042. "In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years." *Id.* When a claim of equitable estoppel is based on a patentee's allegedly misleading inaction, the "inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id.*

Plumley seeks summary judgment on Defendants' claim that, as a result of Plumley's refusal to definitively state whether he would bring suit for infringement, Plumley should be estopped from pursuing this action. (*See* Joint Mot. 26 ("Mockett's counsel asked Plumley directly whether he was ever going to sue for patent infringement. Plumley refused to say he would. Such misleading silence can support a finding of equitable estoppel and is more than enough to raise a genuine issue of material fact.")). There is no material dispute concerning the factual basis of Defendants' equitable estoppel defense; Plumley acknowledges that he did not respond to a pointed question about his future intentions of litigating an infringement claim against Defendants. Nonetheless, the record does not reveal "affirmative conduct that estoppel requires includ[ing] misrepresentations, affirmative acts of misconduct, or intentionally misleading silence" by Plumley. *Adelberg Lab., Inc. v. Miles, Inc.*, 921 F.2d 1267, 1273 (Fed. Cir. 1990). Defendants argue that Plumley's silence during a deposition in a malicious prosecution action—notably, unrelated to Defendants' alleged infringement—constitutes "misleading silence [that] can support a finding of equitable estoppel." (Joint Mot. 26). Defendants' conclusory characterization of the legal effect of this instance of Plumley's silence on the case at hand is contrary to case law.

"[S]ilence alone will not create an estoppel unless there was a clear duty to speak . . . or somehow the patentee's continued silence reenforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested." *Aukerman*, 960 F.2d at 1043-44 (internal citations omitted). Neither of these scenarios is present in this case. Certainly Defendants do not, and cannot, point to any prior acquiescence on Plumley's part, as the Parties had been adversarial for years before the allegedly misleading silence. Moreover, Plumley's refusal to answer a deposition question on the advice of counsel in a malicious prosecution action that he initiated is not a situation in which he violated a "clear duty to speak" regarding his intentions to file an infringement suit in the future. Rather, this is a case in which "there was no action by plaintiff that would lead a reasonable competitor to assume that continued infringement by defendant was condoned or approved by plaintiff." *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992).

Even if we were to assume that Plumley's silence in this instance were misleading, "mere silence must be accompanied by some *other* factor which indicates that the silence was sufficiently misleading as to amount to bad faith." *Id.* at 1295. It cannot be said that Plumley's declining to respond to a deposition question in other litigation between the Parties indicates his bad faith intent to lull

CIVIL MINUTES - GENERAL

EXHIBIT 42 - PAGE 001359

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

Defendants into believing he tacitly approved of their flip-top grommet.[6]  Additionally, Defendants have failed to make any showing regarding the remaining elements of their equitable estoppel defense: reliance and prejudice.  Reliance requires the "accused infringer [to] show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." *Aukerman*, 960 F.2d at 1042-43.  The accused infringer must also show material prejudice if the patentee is not estopped from proceeding.  *Id.* at 1043.  Since Defendants have failed to offer any evidence of misleading conduct by Plumley, and moreover have failed to present evidence that they relied upon Plumley's silence to their detriment, Defendants have failed to raise a triable issue on their defense of equitable estoppel.  Accordingly, Plumley's motion for partial summary judgment on Defendants' defense of equitable estoppel is **GRANTED**.

### F.    Inequitable Conduct

Plumley has moved for partial summary judgment on Defendants' claim that Plumley breached his duty of good faith and candor to the PTO and that, therefore, the '047 patent is unenforceable for inequitable conduct.  *See* 37 C.F.R. § 1.56(a) (The "duty of candor and good faith in dealing with the [PTO] . . . includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability as defined in this section.")  A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution.  *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006).  The party asserting inequitable conduct must prove a threshold level of materiality and intent by clear and convincing evidence; a greater showing of one factor allows a lesser showing of the other.  *Id.*  Nonetheless, "[t]he required showings of materiality and intent are separate, and a showing of materiality alone does not give rise to a presumption of intent to deceive."  *Praxair, Inc. v. ATMI, Inc*., 543 F.3d 1306, 1313 (Fed. Cir. 2008).  If the requisite levels of materiality and intent are shown, we must then balance "the equities to determine whether the patentee has committed inequitable conduct that warrants holding the patent unenforceable."  *Monsanto Co. v. Bayer BioScience N.V.*, 363 F.3d 1235, 1239 (Fed. Cir. 2004).

As the moving party without the burden of proof at trial, Plumley may discharge his initial burden on summary judgment by "either produc[ing] evidence negating an essential element" of Defendants' claim, or by showing that Defendants do "not have enough evidence of an essential element to carry [their] ultimate burden of persuasion at trial."  *Nissan Fire*, 210 F.3d at 1102.  If Plumley discharges his burden by either method, the burden then shifts to Defendants to produce evidence creating a triable issue on a clear and convincing evidence standard sufficient to defeat Plumley's motion.  *Id.* at 1103.  "[T]he decision respecting inequitable conduct is a discretionary decision to be made by the judge on his or her own factual findings.  Thus, a disputed finding . . . is one for the judge

---

[6] *See Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992) ("The fact that [plaintiff's] attempts to negotiate licenses were followed by a period of silence does not, in itself, constitute the necessary misleading conduct."); *Vectra Fitness, Inc. v. Icon Health & Fitness, Inc.,* 288 F. Supp. 2d 1155, 1166 (W.D. Wash. 2003) (plaintiff's "willingness to engage in licensing negotiations with [defendant] cannot be the basis of misleading conduct").

EXHIBIT 42 - PAGE 001360

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

to resolve, not the jury, albeit not on summary judgment if there is a genuine dispute." *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993). Moreover, on summary judgment "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

It is rare to resolve a claim of inequitable conduct at the summary judgment stage. *Monsanto*, 363 F.3d at 1240. For instance, there is seldom direct evidence of a patent applicant's intent to deceive; this element "must generally be inferred from the facts and circumstances surrounding the applicant's overall conduct." *Paragon Podiatry*, 984 F.2d at 1189-90. As the Federal Circuit has explained, although the intent element "may be proven by a showing of acts the natural consequence of which were presumably intended by the actor, this requires the fact finder to evaluate all the facts and circumstances in each case. Such an evaluation is *rarely* enabled in summary proceedings." *Id.* at 1190 (citation omitted, emphasis in original). Additionally, a court must weigh the level of intent against the materiality of any misrepresentations and balance the equities of the case as a whole. If the evidence respecting materiality, intent, or equitable considerations are "reasonably inferable either way," then the claim is not amenable to summary judgment. *Id.* In this case, the Parties dispute not only the issue of intent, but also whether the physical Mockett RG and LO grommets were material and therefore whether their omission, among other things, was misleading.

**1. The Element of Materiality**

Plumley argues that the references cited by Defendants were merely cumulative to information already on record during prosecution. This assertion, if supported, would discharge Plumley's initial burden of negating the element of materiality since a withheld prior art reference "is *not* material for the purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner." *Digital Control,* 437 F.3d at 1319. A reference is cumulative if it "teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the PTO." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1575 (Fed. Cir. 1997). However, Plumley has not squarely addressed whether the Mockett grommets were cumulative under this standard. We note that Plumley does *not* state that the physical Mockett LO and RG grommets were themselves cumulative to prior art already before the examiner. Rather, he states that "[m]odifying the LO and RG grommets as later proposed by Mockett renders them cumulative to the Cournoyer patent that was part of the original prosecution of the '047 patent." (Joint Mot. 32). Even if the physical LO and RG grommets could have been *modified* so as to be cumulative to other materials provided to the examiner, it does not necessarily follow that these references are immaterial. "What is relevant is whether [the withheld material] discloses subject matter relevant to the examination of the ['047] patent application that is not taught by the [material already before the PTO]." *Eli Lilly & Co.,* 119 F.3d at 1575. Plumley's claim that modifying the Mockett grommets in accordance with Defendants' current obviousness arguments renders them cumulative to Cournoyer does not support an argument that the unmodified grommets are cumulative to Cournoyer or other references disclosed during prosecution.

In light of Plumley's failure to contend that the unmodified Mockett grommets are cumulative, he has neither negated the element of materiality under the relevant standard nor demonstrated that

**CIVIL MINUTES - GENERAL**
EXHIBIT 42 - PAGE 001361

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | Date | May 26, 2010 |
|----------|---------------------|------|--------------|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | |

Defendants would be unable to prove materiality by clear and convincing evidence. Thus, Plumley has not discharged his initial burden with respect to this element.

**2.      The Element of Intent**

Plumley contends that he "had no intent to [d]eceive anyone. His counsel did not include copies of the LO or RG prior art because, in his opinion, they were not material . . . ." (Joint Mot. 32). Notwithstanding this assertion of good faith, there remains a triable issue regarding Plumley's intent to deceive the examiner, which may be inferred from the facts and circumstances surrounding an applicant's overall conduct. *Impax Labs.*, 468 F.3d at 1375. Plumley was aware of the physical structure of the RG and LO grommets before applying for his patent, as he processed orders for the company that manufactured the grommets for Mockett. (*See* Undisputed Facts D221, D415-20). Given Plumley's familiarity with the grommet designs, and the absence of any explanation as to why he would have considered the unmodified grommets to be cumulative to prior art references at the time of prosecution, his asserted lack of intent to deceive turns on a credibility assessment that is inappropriate at the summary judgment stage. The existence of a triable issue is especially pronounced given that the Court must weigh the level of intent against the materiality of the withheld prior art references in determining whether inequitable conduct is shown by clear and convincing evidence. We therefore **DENY** Plumley's motion for partial summary judgment on Defendants' defense of inequitable conduct.

**III.      Conclusion**

In light of the foregoing discussion, we hereby:

**GRANT** Plumley's motion to exclude Haas's February 2009 Report.

**GRANT in part** Plumley's motion to exclude Van Horn's expert report; Van Horn's declaration is excluded from evidence to the extent it incorporates or relies upon the new opinions found in Haas's February 2009 Report.

**GRANT in part** Plumley's motion to exclude Asbaghi's expert report; Asbaghi's declaration is excluded from evidence to the extent it discusses issues relating to inequitable conduct and invalidity.

**GRANT** Plumley's motion for partial summary judgment of literal infringement of the asserted claims of the '047 patent by Defendants' accused device.

**GRANT** Plumley's motion for partial summary judgment of a finding that the asserted claims of the '047 patent are not anticipated by Herrera.

**DENY** Plumley's motion for partial summary judgment of a finding that no combination of prior art renders obvious the asserted claims of the '047 patent.

**DENY** Defendants' motion for partial summary judgment of a finding that the '047 is invalid as obvious.

EXHIBIT 42 - PAGE 001362

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-2868-GHK (Ex) | | Date | May 26, 2010 |
|---|---|---|---|---|
| Title | *Roger Plumley v. Doug Mockett, et al.* | | | |

**GRANT** Defendants' motion for partial summary judgment of no willful infringement of the '047 patent.

**GRANT** Plumley's motion for partial summary judgment on Defendants' defense of equitable estoppel.

**GRANT** Plumley's motion for partial summary judgment on Defendants' defense of laches.

**DENY** Plumley's motion for partial summary judgment on Defendants' defense that the '047 patent is unenforceable as a result of inequitable conduct.

This case **SHALL** be set for further status conference on **June 21, 2010** at **1:30 p.m.** The Parties **SHALL** file a joint status report by **no later than June 14, 2010** addressing the following issues:

1. Whether a further mediation or settlement conference is advisable in light of the Court's ruling on these motions;

2. Proposed dates for pre-trial conference and trial on the remaining issues if settlement is not advisable or is ultimately unsuccessful;

3. Inasmuch as obviousness and potential damages are the only remaining issues that may be tried by a jury (the issue of inequitable conduct is only triable by the Court), whether the Parties are agreeable to a Court trial on those issues so as to have one unified trial before the Court; and

4. Any other matters that would facilitate the efficient resolution of this case.


**IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
| Initials of Deputy Clerk | | Bea | |

EXHIBIT 42 - PAGE 001363