# EXHIBIT 45

EXHIBIT 45 - PAGE 001384

Westlaw.

Page 1

Slip Copy, 2009 WL 4042627 (E.D.Mich.)
**(Cite as: 2009 WL 4042627 (E.D.Mich.))**

H
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. Michigan,
Southern Division.
HENROB LIMITED, Plaintiff/Counter-Defendant,
v.
BÖLLHOFF SYSTEMTECHNICK GMBH & CO. and BÖllhoff Rivnut, Inc., Bayerische Motoren Werke AG, BMW NA, Rolls-Royce Motor Cars Ltd, and Rolls-Royce NA, Defendants/Counter-Plaintiffs.
No. 05-CV-73214-DT.

Nov. 19, 2009.

**OPINION AND ORDER DENYING HENROB'S MOTION FOR RECONSIDERATION**

ROBERT H. CLELAND, District Judge.

*1 This litigation involves two patents, U.S. Patent No. 5,752,305 (the "'305 Patent") and U.S. Patent No. 5,779,127 (the "'127 Patent"), which deal with the self-piercing riveting technology invented by Plaintiff/Counter-Defendant, Henrob Limited ("Henrob"). On September 29, 2009, the court issued an order granting a motion for summary judgment with respect to Henrob's Claims of Willful Infringement, filed by Defendants/Counter-Plaintiffs, Böllhoff Systemtechnik GmbH & Co., and Böllhoff Rivnut, Inc., (collectively "Böllhoff") and Defendants Bayerische Motoren Werke AG, BMW NA, Rolls-Royce Motor Cars Ltd., and Rolls-Royce NA (collectively "BMW"). Henrob timely filed a motion for reconsideration of that order on October 14, 2009 and, pursuant to the court's October 21, 2009 briefing order, Defendants filed a response to the motion on November 6, 2009. Having reviewed the briefs, the court finds a hearing to be unnecessary.

*See* E.D. Mich. LR 7.1(g). For the reasons set forth below, the court will deny the motion.

**I. STANDARD**

Motions for reconsideration may be granted when the moving party shows (1) a "palpable defect," (2) by which the court and the parties were misled, and (3) the correction of which will result in a different disposition of the case. E.D. Mich. L.R. 7.1(g)(3). A "palpable defect" is a "defect which is obvious, clear, unmistakable, manifest or plain." *Olson v. The Home Depot,* 321 F.Supp.2d 872, 874 (E.D.Mich.2004).

Under Federal Rule of Civil Procedure 59(e), the court may grant a motion to alter or amend a judgment, if there is: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson,* 428 F.3d 605, 620 (6th Cir.2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir.1999)).

**II. DISCUSSION**

Henrob asserts that Defendants are liable for willful infringement of the '305 Patent. In the court's September 29, 2009 order, the court granted summary judgment to Defendants on this issue after finding as a matter of law that Henrob could not prove willful infringement of a valid patent under the standard established in *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed.Cir.2007). In *Seagate,* the Federal Circuit held that proof of willful infringement requires a showing of objective recklessness:

[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringe-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.
EXHIBIT 45 - PAGE 001385

Slip Copy, 2009 WL 4042627 (E.D.Mich.)
(Cite as: 2009 WL 4042627 (E.D.Mich.))

ment of a valid patent .... The state of mind of an accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.

*2 *Seagate,* 497 F.3d at 1371. Thus, in resolving Defendants' motion for summary judgment, the court was required to focus upon two inquires: (1) whether there is a triable issue regarding the existence of an objectively high likelihood that Defendants' actions with respect to Böllhoff's SPR machines constituted infringement of the '305 Patent and, if so, (2) whether this objectively defined risk was either known or so obvious that it should have been known to Defendants. After reviewing all of the evidence and arguments submitted by the parties, the court found that Henrob could not meet the first prong of this standard, the objective prong, and granted summary judgment to Defendants on this basis.

Specifically, the court found that in light of the reasonableness of Defendants' non-infringement and invalidity positions, there is no clear and convincing evidence of an objectively high likelihood of infringement of the a valid patent. The court stated:

> Following *Seagate,* the Federal Circuit has stated that "[u]nder this objective standard, both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent." *Black & Decker, Inc. v. Robert Bosch Tool Corp.,* 260 F. App'x 284, 291 (Fed.Cir.2008). Here, Defendants have demonstrated, both in this motion as well as their previous motions for summary judgment, that they have *both* legitimate defenses to infringement claims as well as credible invalidity arguments. In light of the facial validity of Defendants' positions, the court finds as a matter of law that Henrob will be unable to convince a reasonable jury by clear and convincing evidence of the existence of objectively high likelihood that Defendants' actions constituted infringement of a valid patent.

(9/29/09 Order at 17.)

In its motion for reconsideration, Henrob now argues that the court used an incorrect time-frame when evaluating the objective prong of the *Seagate* test. According to Henrob, case law developed after the parties had completed their briefing, but prior to the court issuing its order establishes that Defendants cannot rely on defenses first arising during litigation with regard to the objective prong of the *Seagate* test. Instead, Henrob argues that the court must focus on the facts and circumstances prior to Defendants' alleged infringement.

Henrob cites to a number of cases from other, non-binding courts, in support of its argument. In August, the Eastern District of Texas held, in an unpublished case that "the 'objective' prong of the *Seagate* standard focuses on an 'objective' view of the facts and circumstances surrounding an accused infringer at the time that it acts." *i4i Ltd. P'ship v. Microsoft Corp.,* No. 6:07CV113, 2009 WL 2449024, at *10 (E.D.Tex. Aug.11, 2009). Citing Fourth Amendment jurisprudence, the court noted that "[t]raditionally and overwhelmingly, 'objective' tests focus on the facts and circumstances available to an actor at the time that the action under scrutiny was taken." *Id.* (citations omitted). The court reasoned:

> *3 As a consequence, the number of creative defenses that Microsoft is able to muster in an infringement action after years of litigation and substantial discovery is irrelevant to the objective prong of the Seagate analysis. Rather, the correct analysis focuses on whether, given the facts and circumstances prior to Microsoft's infringing actions, a reasonable person would have appreciated a high likelihood that acting would infringe a valid patent.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.
EXHIBIT 45 - PAGE 001386

Slip Copy, 2009 WL 4042627 (E.D.Mich.)
**(Cite as: 2009 WL 4042627 (E.D.Mich.))**

*Id.*

Similarly, in *Krippelz v. Ford Motor Co.*, 636 F.Supp.2d. 669 (N.D.Ill.2009) the district court noted that "[c]laims of willful infringement are governed by time and circumstance at each stage of the defendant's infringement." *Id.* at 671. The court explained:

> The first stage customarily begins when the inventor sends the alleged infringer some form of notice of his, her or its invention, either as part of a cease-and-desist demand or an offer to sell one or all of the owner's patent rights. The second stage usually begins at a point soon after the lawsuit is filed. Other stages may commence after a decision on re-examination, particular rulings by the court or the return of a verdict of infringement. In this case, I use the stages suggested by Plaintiff; they seem reasonable as dividing lines in this case.

*Id.* The court then analyzed each "stage" to determine whether the claim for willful infringement succeeded at each stage. *Id.* 671-74. At each stage, the Krippelz court addressed both the objective and subjective prongs, making it somewhat difficult to determine whether the relevant findings of fact, constrained to a particular time period, related to the objective or subjective prong. *Id.* Nonetheless, this court agrees that the Krippelz court's view of the objective prong appears to be aligned with the court's view of the objective prong in *i4i*, that is, restricted to the time period surrounding the alleged infringement.

The court is not convinced by the reasoning expressed in *i4i* or the methodology expressed in *Krippelz* that the objective inquiry is necessarily limited to the defenses which were articulated at the time of the alleged infringement. Such a limitation, it seems to this court, improperly conflates the subjective and objective prongs of the willfulness test in contravention of the analysis set forth by the Federal Circuit in *Seagate*.[FN1] Other courts have agreed.

> FN1. In this regard, Henrob's motion for reconsideration suffers from the same deficiencies as did its opposition brief to Defendants' summary judgment motion on willfulness.

For example, the Northern District of Illinois rejected the plaintiff's argument that the "defendants' failure to assert a non-infringement defense, and their lack of a reasonable invalidity defense at the time of infringement, warrant a finding that defendants acted despite an objective likelihood of infringement." *Trading Techs. Intern., Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2008 WL 63233, at *2 (N.D.Ill. Jan.3, 2008). The court found that this argument "better rests with the consideration of [the] defendants' subjective intent." *Id.*

*4 Similarly, the District of Rhode Island rejected *i4i* 's focus "on whether defenses would have been objectively reasonable and apparent before" infringement and before litigation. *Uniloc USA, Inc. v. Microsoft Corp.*, 640 F.Supp.2d 150, 177 (D.R.I.2009). The court rejected *i4i* 's approach, stating "[t]his Court is not convinced that such a 'before and after' line is so easily drawn, or for that matter appropriate, to measure the objective likelihood (or lack thereof) that a party acted to infringe a valid patent." *Id.* Likewise, the Southern District of Texas has held that events that occurred after the alleged infringement are relevant to the willfulness analysis. *Safeco, Inc. v. Cameron Intern. Corp*, No. H-05-0739, 2009 WL 2424108, at *20 n. 129 (S.D.Tex. Jul.31, 2009) The court found that "[b]ecause the first prong of the Seagate standard is an objective test, the reexaminations are relevant, even though they occurred after Cameron's allegedly infringing activity began." *Id.*

These cases stand for the proposition that where the defendant's noninfringement or invalidity defenses present a "close factual call[ ]," the plaintiff cannot prove willfulness. *Uniloc USA*, 640 F.Supp.2d at 177; *see also Safeco*, 2009 WL 2424108, at *22 (holding that because one of the "non-infringement arguments presents a close factual question for

Slip Copy, 2009 WL 4042627 (E.D.Mich.)
**(Cite as: 2009 WL 4042627 (E.D.Mich.))**

some of the accused infringing devices[,] ... it precludes a finding of willful infringement as a matter of law"). The court agrees with the analysis set forth by *Uniloc* and *Safeco,* and finds that *i4i* 's reasoning and Henrob's arguments based thereon are not supported by *Seagate* itself.

Henrob asserts that "the proper timeframe for evaluating [Defendants'] recklessness is the time at which each began its infringing conduct." (Pl.'s Mot. at 10.) Thus, Defendants cannot "cobble together" defenses which they did not assert prior to litigation but must rely only on those arguments that Defendants asserted at the time of their alleged infringement. (*Id.* at 10-11.) However, in *Seagate,* the Federal Circuit held that "[t]he state of mind of the accused infringer is not relevant to this objective inquiry." 497 F.3d at 1371. Henrob's argument focuses too much on what defenses were available or known to Defendants at the time of the infringement, which is more properly considered at the subjective portion of *Seagate* 's test.

Moreover, the Federal Circuit also specifically stated that the objectively-defined risk prong is "determined by the record developed in the infringement proceeding." *Id.* ("If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer."). This language at least suggests that, contrary to Henrob's argument, "after-the-fact" litigation defenses and arguments *are* relevant to the objective prong of *Seagate.*

*5 This is supported by cases developed in the Federal Circuit after *Seagate*. In *Black & Decker,* albeit an unpublished case, the Federal Circuit stated that "[u]nder this objective standard, both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent." *Black & Decker, Inc.,* 260 F. App'x at 291. While this language is properly cast as dicta, the Federal Circuit later reaffirmed this principle in a published case. In *DePuy,* the court held that the plaintiff could not meet the objective prong of *Seagate* as a matter of law where "the record developed in the infringement proceeding in this case, viewed objectively, indisputably shows that the question of equivalence was a close one." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1337 (Fed.Cir.2009).

Thus, Henrob has not identified a palpable defect in the court's September 29, 2009 order which held that Henrob could not establish willfulness by clear and convincing evidence based on the strength of Defendants' noninfringement and invalidity defenses.

Finally, Henrob argues that the court's order contains a palpable defect because the court "did not address Henrob's third-party evidence of an objectively high likelihood that Defendants' actions constituted infringement of a valid patent." (Pl.'s Mot. at 17.) Specifically, Henrob refers to an October 18, 2006 email sent by Jaguar in which Jaguar indicated that "our opinion was that the Bolhoff [sic] method (which they demonstrated to us) was close enough to the Henrob patents for Jaguar to expose itself to a significant risk, should it be decided to use Bolhoff [sic] equipment." (*Id.* at 18.) Henrob contends that this email provides evidence of an objectively high likelihood that Defendants' actions constituted infringement of a valid patent. (*Id.*)

The court disagrees. First, the email, for the purpose which Henrob seeks to utilize it, constitutes inadmissible hearsay evidence because it would be offered to prove the truth of the matter asserted.[FN2] Moreover, the court agrees with Defendants' argument that this email, even if admissible, "does not state what Henrob contends it states." (Defs.' Resp. at 10.) Taken in context, the Jaguar email was sent by a Jaguar representative who was rejecting Defendants' sales pitch to Jaguar. The email indicates that the "risk" was too high to justify purchase, but the email does not further define the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.
EXHIBIT 45 - PAGE 001388

<mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

Slip Copy, 2009 WL 4042627 (E.D.Mich.)
(Cite as: 2009 WL 4042627 (E.D.Mich.))

"risk" to which Jaguar refers. The risk most likely refers to risk of litigation, rather than risk of actual infringement. Further, the email does not specify the basis for this "conclusion" or what types of tests, materials, analyses, or legal considerations were taken into account when evaluating this "risk." Accordingly, even if this email were admissible-which it is not-it does not constitute more than, possibly, a scintilla of evidence in support of Henrob's position on willfulness. It is not enough to overcome Defendants' nonfrivolous arguments of noninfringement and invalidity, and certainly not enough for a jury to find by clear and convincing evidence any objectively high likelihood of infringement of a valid patent. The court's failure to consider this email, therefore, did not result in a palpable defect the correction of which will result in a different disposition of this case.

> FN2. This is not to say that the email could not be used for other purposes. For example, the email might have been admissible with regard to the subjective prong, that is, whether Defendants knew or should have known of an objectively high likelihood that they were infringing Henrob's patent.

*6 Accordingly, Henrob's motion for reconsideration will be denied.

### III. CONCLUSION

IT IS ORDERED that Henrob's motion for reconsideration [Dkt. # 328] is DENIED.

E.D.Mich.,2009.
Henrob Ltd. v. Bollhoff Systemtechnick GmbH & Co.
Slip Copy, 2009 WL 4042627 (E.D.Mich.)

END OF DOCUMENT